Weygandt, C. J.
 

 This case fortunately involves no controversy as to either the law or the operative
 
 *599
 
 facts. Bather, the task is that of applying undisputed law to undisputed facts.
 

 The entire difficulty arises from the following language employed by the defendant insurance company in an endorsement attached to the policy:
 

 “On account of the aviation hazard of the insured,, this policy is issued with the following amendment:
 

 “Death as a result directly or indirectly of service,, travel or flight in or on any species of aircraft, except as a farepaying passenger in a licensed plane-operating on a regular schedule with a licensed pilot over established air lines, is a risk not assumed under this policy, but if the insured shall die as a result, directly or indirectly of such service, travel or flight,, as above provided, the company will pay to the bene-' ficiary the reserve on this policy.”
 

 In the insured’s application, dated November 14,. 1940, appear the following questions and answers:
 

 “9. Have you ever made any aircraft ascensions? No.
 

 “Do you contemplate making any aircraft ascensions? No.”
 

 However, the foregoing quotations are not the only language to be given careful consideration in reaehinga proper decision in this case. Significantly, a comprehensive so-called “Aviation Questionnaire” was-thereafter submitted to the insured. He answered and signed it December 10, 1940, stating that he had made two trips in aircraft, that they were for pleasure,, that he had taken a civilian air reserve club examination but failed to pass, that he neither owned - nor-contemplated owning a plane, that he had no friend or relative who owned or operated any type of aircraft, that he was not a member of any aviation school or club, that he had no intention to join such an organization, that he was connected with no aviation concern in any capacity, that he was connected with no business which maintained an airplane for the
 
 *600
 
 use of its employees or officers, and that he was not in military service.
 

 Six days after the aviation questionnaire was executed the defendant company issued the policy with the endorsement attached and embodying the language first quoted above.
 

 Approximately a year and a half after the issuance of the policy the insured became a member of the United States Naval Reserve and was assigned to the Navy Air Corps. He became a pilot on a torpedo bomber. On October 18, 1944, he returned from a mission over Manila Bay and was preparing to land on his own carrier when he was told that the landing deck was fouled by a crashed plane and that it therefore would be necessary for him to proceed to another carrier some miles distant. While searching in the darkness for the other carrier he exhausted his supply of gasoline, and his plane plunged into the sea. Some members of the crew were rescued, but the insured was not seen again nor was his body recovered.
 

 From the foregoing recital of facts it is obvious that some difficulty is encountered in eliminating sentiment and sympathy from a consideration of this case. However, the law imposes the duty so to do.
 

 The defendant company concedes the general rule tó be that an insurance contract — like any other — must be construed adversely to the party who drew it. This contract was, of course, prepared by the company.
 

 However, the defendant insists that the terms of the contract are clear and unambiguous and that hence no construction thereof is either necessary or proper. In other words it is urged that under the provisions of the policy, liability for death incurred in any kind of aviation — civilian or military — is plainly excluded.
 

 But a study of the application, the questionnaire and the policy discloses no mention of war except in the
 
 *601
 
 following provisions relating to double indemnity for accidental death:
 

 “Exceptions — Death resulting directly or indirectly, wholly or partially from any of the following, is a risk not assumed under this accidental death benefit provision:
 

 “Self destruction, sane or insane; being or having been in, on, or about any species of aircraft; war, riot, or insurrection or any act incident thereto; violence intentionally inflicted by another person; violation of law by the insured; disease, bodily or mental infirmity; inhalation of a gas or fumes; sunstroke; any kind of poison.”
 

 It should be noted that the plaintiff is not asking payment of double indemnity under these provisions for the reason that the exclusion is clear. The insured lost his life in time of war, and therefore according to the express language relating to accidental death, double indemnity may not be recovered.
 

 This specific exclusion of war risk in the double-indemnity feature of the policy emphasizes the failure of the company to mention war in the other provisions. What inference is to be drawn from such failure? The inquiry of the company related to the civilian activities of the-insured. The opening phase of the above quoted endorsement reads: ‘ ‘ On account of the aviation hazard
 
 -.of the
 
 insured.” (Italics supplied.) Significantly the company did not employ the broad, general language “on account of aviation hazard.” Instead the reference was to merely the aviation hazard “of the insured,” which at that time was civilian. Since the company in drafting this feature of the policy failed to mention war risk which was elsewhere named specifically, must the resultant doubt be resolved in favor of the company or of the insured?
 

 Many eases are cited in the briefs of counsel, but there is no indication of deviation from the conceded elementary principle that in case of ambiguity or doubt,
 
 *602
 
 a contract of insurance should be construed strictly against the insurer and liberally in favor of the insured where, as is usually the case, the contract has been wi’itten or prepared by the insurer.
 

 This court is of the opinion that under the circumstances of this case the Court of Appeals was not in error in affirming the judgment of the trial court in favor of the plaintiff.
 

 Judgment affirmed.
 

 Turner, Zimmerman and Sohngen, JJ., concur.
 

 Matthias, Hart and Stewart, JJ., concur in paragraph one of the syllabus but dissent from paragraph two of the syllabus and from the judgment.