LOLA J. TRAHAN V. SOUTHLAND LIFE INSURANCE COMPANY

No. A-5567. Decided April 11, 1956.
Rehearing overruled May 16, 1956.
(289 S.W. 2d Series 753)

*Hoyo, Shelton & Haight* and *Horace P. Shelton, Jr.*, all of San Antonio, for petitioner.

The Court of Civil Appeals erred in disregarding the finding of fact by the jury to the effect that deceased and petitioner would not have accepted the policy in question unless they had believed all restriction on the coverage of Joseph Trahan while flying in military aircraft had been removed. Wisdom v. Smith, 146 Texas 420, 209 S.W. 2d 164; Manhattan Life Ins. Co. v. Stubbs, Com. App., 234 S.W. 1099; American National Ins. Co. v. Tross, 138 Texas 116, 157 S.W. 8d 620.

*Brewer, Matthews, Nowlin & Macfarlane,* and *Forney Nowlin,* all of San Antonio, *R. L. Dillard, Jr.,* and *Curtis White,* both of Dallas, for respondents.

An agent has no authority to change or modify a life insurance policy, nor can an officer of the company do so. It is only within the jurisdiction of the Underwriting Department of the company to determine what, if any, change can be made in the policy, and any statement made by an officer or agent is only ministerial and not binding on the company. Southerland Life Ins. Co. v. Statler, 139 Texas 496, 163 S.W. 2d 623; Texas Life Ins. Co. v. Shuford, 131 S.W. 2d 118, no writ history; Southland Life Ins. Co. v. Vela, 147 Texas 478, 217 S.W. 2d 660.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is a suit by petitioner, Lola J. Trahan, upon a policy of life insurance issued by respondent, Southland Life Insurance Company, in which her deceased husband, Claude Joseph Trahan, was the insured and she was the beneficiary. A judgment by the trial court in her favor was reversed by the Court of Civil Appeals, and judgment rendered that she recover only the amount of premiums paid. 284 S.W. 2d 207.

We take this statement from the opinion of the Court of Civil Appeals:

"Claude Trahan, the insured, in 1953 was a Sergeant on flying status at Randolph Air Force Base. He made application for an insurance policy, but before issuance Tom Pair, as soliciting agent for appellant, convinced insured that Southland Life Insurance Company could offer a better policy than the company with which the insured was dealing. The insured explicitly stated that he would not be interested in any policy which excluded flying coverage. Insured relied on Pair's representations and made application for a policy with Southland. When Pair delivered the policy the insured read it and refused to accept it, because it contained two aviation riders. One was known as the War Aviation Risk Rider and the other was known as Partial Exclusion of Aviation Risk. Twenty-four days later, Pair returned with a policy, handed it to insured and showed him a separate slip of paper which stated that the War and Aviaiton Risk Rider had been removed. This was a true statement, but the other rider had not been removed. Insured did not again inspect the policy. Relying upon the printed slip and the agent's statement that the policy 'takes care of the flying coverage,' he accepted the policy. A few months later the insured died as a result of a fall from an airplane while making a military flight, 20,000 feet over the Gulf of Mexico. He was a member of the crew and was on training flight. The insurer refused to pay the death benefits because the insured suffered death by reason of the flight, which was a risk excluded by the rider known as Partial Exclusion of Aviation Risk."

At the conclusion of the testimony petitioner filed a motion for judgment based upon the undisputed facts. The court postponed consideration of the motion until after the verdict of the jury had been returned and then sustained the motion. Its judgment was rendered on the motion and not on the verdict. In brief, the jury found that Tom Pair, the soliciting agent of the respondent, represented to the insured that the policy covered aviation risks and that the insured relied upon those rep-

resentations in accepting the policy. We agree with the holding of the Court of Civil Appeals that the verdict would not support a judgment for petitioner, and that the trial court did not err, therefore, in disregarding the verdict in entering judgment. This for the reason that it is provided by statute that a soliciting agent of a life insurance company "shall not have the power to waive, change or alter any of the terms or conditions of the application or policy." Insurance Code, Art. 21.04, Acts 1951, 52nd Legislature, Chap. 491.

■ Neither do we think that the facts would support a judgment for petitioner on the ground of an estoppel *in pais*. We find no evidence of any actions by any general agent or other official of the company based upon knowledge by him which would work an estoppel against the company. As observed by the Court of Civil Appeals, "Agency by estoppel depends upon the attitude, conduct and knowledge of the principal, not the agent."

■ We come now to consider the ground upon which we think the judgment of the trial court should be affirmed. That, in effect, is the ground upon which the trial court based its judgment. It is that the policy was ambiguous. It is a rule too familiar to call for the citation of authorities that in case of doubt as to its meaning a policy of insurance should be construed strictly against the insurance company, whose language it is, and liberally in favor of the insured.

The record discloses that in his application for the policy the insured was asked this question: "Have you ever been a pilot or a crew member of an airplane in any of the Armed Services?" To which he answered: "Yes." In answer to the question: "In what capacity?," he answered: "Instructor gunner." The application further disclosed that his occupation was "U. S. A. F.;" that he had been in the air force since 1943, and that his address was "Randolph A.F.B., Texas." When the policy issued on the faith of the application was presented to the insured by Tom Pair, the soliciting agent, it contained two riders, one labeled "WAR AND AVIATION RISK EXCLUSION RIDER," and the other "PARTIAL EXCLUSION OF AVIATION RISK." The first-mentioned rider defined "Home Area" as the United States, the District of Columbia, and the Dominion of Canada. The rider limited the amount to be paid thereunder to the gross premium or insurance reserve if the death of the insured:

"1. Occurs as a result of an act of war, declared or unde-

clared, if such act occurs outside of the Home Area while the Insured is in war service, and death occurs while the Insured is in war service or within six months after the termination of such service; or

"2. Occurs within two years after date of issue of this policy as the result of an act of war, declared or undeclared, if such act occurs outside the Home Area while the Insured is engaged in a civilian non-combatant occupation (including Red Cross, relief and moral improvement workers and war correspondents) which requires association with the military, naval or air forces of any country at war, declared or undeclared, such occupation being hazardous by causing exposure to the perils of war; provided such death occurs outside the Home Area or within six months after return thereto; or

"3. Occurs inside or outside the Home Area whether or not the Insured is in war service and as a result of operating or riding in or descending from any kind of aircraft if the Insured is pilot, officer or member of the crew of such aircraft or is giving or receiving any kind of training or instructions or has any duties aboard such aircraft or requiring descent therefrom."

The other rider made similar limitation upon the amount to be paid upon the death of the Insured:

"If at any time, the Insured is a pilot, officer, or member of the crew of any aircraft, or is operating or assisting in the operation of any aircraft, or is giving or receiving any kind of training or instruction or has any duties whatsoever with respect to any aircraft while aboard it during travel or flight, and if the death of the Insured results, directly or indirectly, from travel or flight in, or descent from or with, such aircraft, * * * ."

■ When the policy was tendered to the Insured he refused to accept it because it contained the WAR AND AVIATION RISK EXCLUSION RIDER. Thereafter that rider was removed from the policy and the policy returned to the soliciting agent, with a notation by the policy change manager that "Underwriting Department has reconsidered, War and Aviation Rider removed." The agent delivered the slip containing that notation to the Insured, whereupon he accepted the policy with the PARTIAL EXCLUSION OF AVIATION RISK rider still attached.

These facts, to our minds, create a reasonable doubt as to the proper construction of the contract. The application brought home to the Company the knowledge that the applicant had been for many years a member of the U. S. Air Force, and that he had no intention of joining any other branch of Service. The particular limitation in the first rider to which he evidently objected was number (3) quoted above. There is no substantial difference between that limitation and the limitation contained in the second rider, which remained on the policy after its delivery. The fact that the Company would place two practically identical riders on the same policy within itself raises a question as to its intention. Under the provisions of the limitation in each rider the only contingency upon which the Company would be liable for the face value of the policy when the Insured should lose his life from aviation was that he be a passenger at the time he meets his death, and not an officer or member of the crew of the aircraft. It is significant that the first rider was labeled "WAR AND AVIATION RISK EXCLUSION RIDER," while the second was labeled "PARTIAL EXCLUSION OF AVIATION RISK." A reasonable explanation is that one rider was intended to apply to one in the service, and the other to a civilian. One rider mentions war and the other does not. One indicates that it is an exclusion and the other that it is a "Partial Exclusion." Besides, the Insured was called upon to fill out two applications, which would lend some support to the view that one was to apply to a man in the military service and the other to a civilian. It seems clear to us that when the Insured accepted the policy with the first rider removed, it would not reasonably appear to him that the removal of that rider accomplished nothing so far as it concerned liability for death in an aircraft flight. The fact that the first rider covered risks other than those incurred in aviation is practically of no consequence, in view of the fact that the Insured was then a member of the air force, and his application disclosed that he did not intend to become a member of any other branch of the service. The Company must have known that his reason for turning down the policy with the first rider attached was that it included risk from an aviation flight while he was in the service. We credit the officers of the Company with a desire to deal fairly with applicant and not deceive him by removing one rider and leaving thereon another which accomplished the same purpose as that removed. Viewing the record as a whole, we are led to the conclusion that this policy was of doubtful meaning, and that the trial court properly construed it against the Insurer and in favor of the Insured.

The authorities relied upon which deal with cases where the policy contained but one rider have no application here. Had rider number one never been attached to the policy, and had the policy been delivered with only rider number two attached, there would have been no question of ambiguity. The ambiguity arises by virtue of the fact that there were two applications and two riders on the policy as first tendered, and that one of those riders was removed when the Insured would not accept the policy. We can see no ambiguity in rider number two when considered alone, but when considered in connection with all the facts above stated, we think an ambiguity is disclosed.

We are referred to no authority which we consider directly in point on the question here presented, but our conclusion finds support in Conway v. Life Insurance Company of Virginia, 148 Ohio State 598, 76 N.E. 2d 284. In our view, the facts of the instant case more certainly reveal an ambiguity than do the facts in the cited case. The opinion in that case attached materiality to the fact that the specific exclusion of war risk was in the double-indemnity feature of the policy when there was no mention of war in any of the other provisions. The suit was not for double indemnity, but the court considered the provision with respect thereto as throwing light upon other provisions of the policy.

It is our view that the trial court's judgment was correct, and it is accordingly ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion delivered April 11, 1956.

MR. JUSTICE WALKER, joined by JUSTICE CALVERT, dissenting.

It is my opinion that an otherwise unambiguous written contract cannot be rendered ambiguous by provisions which are deleted from the instrument prior to the consummation of the contract. I would affirm the judgment of the Court of Civil Appeals.

Opinion delivered April 11, 1956.

Rehearing overruled May 16, 1956.