**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff-Appellant-Cross-Appellee,**

v.

**AMERICAN BANK, f/k/a Western State Bank, a Montana Banking Corporation; Northern Lines Layers, Inc., a Montana Corporation, Defendants-Appellees-Cross-Appellants.**

Nos. 92-35319, 92-35368.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided Aug. 31, 1994.

**1160**

Gary M. Zadick, Ugrin, Alexander, Zadick & Slovak; Maxon R. Davis, Cure, Borer & Davis, Great Falls, MT, for plaintiff-appellant-cross-appellee.

Donald W. Molloy, Molloy Law Firm; Sidney R. Thomas, Moulton, Bellingham, Longo & Mather, Billings, MT, for defendants-appellees-cross-appellants.

Before: GOODWIN, CANBY, and KOZINSKI, Circuit Judges.

CANBY, Circuit Judge:

St. Paul Fire and Marine Insurance Co. (St. Paul) appeals the district court's judgment in favor of its insured, American Bank, (American) in a coverage dispute. Because

1. Prior to trial, the court directed a verdict in favor of the two bank officers, at which time

there is no coverage under the terms of the policy, and because the district court clearly erred in finding that St. Paul is estopped from denying coverage, we reverse.

## THE UNDERLYING LITIGATION

In the underlying action, Northern Line Layers (NLL), a customer, sued American Bank and two of its officers for fraud, bad faith, and negligent misrepresentation arising out of the Bank's seizure of funds in NLL's account to satisfy an outstanding debt to the Bank; the Bank counterclaimed for the amount of that debt. The Bank gave notice of the suit both to Wausau Insurance Co., carrier of its directors and officers (D & O) liability policy, and to St. Paul Fire and Marine Insurance Co., carrier of its comprehensive general liability (CGL) policy. The Bank ultimately tendered the defense to St. Paul, which undertook it under a reservation of rights to contest coverage.[1] NLL won a jury verdict and judgment was entered against the Bank for $500,000 in compensatory damages and $100,000 in punitive damages. The court directed a verdict for the Bank on its suit for the debt NLL owed, and judgment was entered in favor of the Bank on the counterclaim in the amount of $239,-629.43.

Both the Bank and NLL appealed to the Montana Supreme Court. That court ruled that there was insufficient evidence to support the award of $500,000 in compensatory damages, and reduced it to $312,000. It also ruled that the trial court erred in entering two separate judgments, one for the Bank and one for NLL, and ordered the court to offset the judgments and enter a single net judgment in favor of NLL for $224,820.58. *See Bottrell v. American Bank*, 237 Mont. 1, 773 P.2d 694 (1989). St. Paul thereafter paid this amount to NLL.

## PROCEEDINGS BELOW

Shortly after the state trial court entered its judgment against the Bank, St. Paul filed this action in federal district court, seeking a declaration that there was no coverage for

Wausau withdrew from the action, denying coverage under the D & O policy.

the claim under St. Paul's CGL policy held by the Bank. (After it paid the judgment as modified by the Montana Supreme Court, St. Paul amended its federal complaint, adding a claim for reimbursement.) The Bank defended, arguing that there was coverage, and even if there was not, that St. Paul was estopped from denying it. At the same time, St. Paul, joined by the Bank, sought a declaration regarding Wausau's obligations under its D & O policy. Prior to trial of the declaratory judgment action, the district court granted summary judgment in favor of Wausau, finding no coverage under the D & O policy. It also granted partial summary judgment in favor of St. Paul, finding no express coverage under its CGL policy. However, it held that there were material issues of fact regarding whether St. Paul was estopped from denying coverage, and it ordered the case to proceed to trial.

Following a bench trial, the district court concluded that the Bank had relied to its detriment on representations made by St. Paul's agent, Myron Deschene, that the St. Paul CGL policy would cover judgments in bad faith actions, such as *Bottrell*. It held that St. Paul was estopped from denying coverage, and was not entitled to reimbursement of the funds it paid in satisfaction of the judgment against the Bank. It also ruled that St. Paul was not entitled to take advantage of the setoff that the Montana Supreme Court imposed, and ordered St. Paul to pay the Bank $428,181.92 (the amount of the setoff, plus accrued interest). St. Paul and the Bank both appeal from this judgment, St. Paul contending that the court was wrong in holding it estopped from denying coverage, and the Bank arguing that the court erred in concluding that there was no express cover-

age for the *Bottrell* judgment under St. Paul's CGL policy.

## DISCUSSION

■ The parties do not dispute that Montana law governs the construction and interpretation of the insurance contract at issue here. We review *de novo* a district court's determination of state law. *Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992). We will not disturb the district court's findings of fact unless they are clearly erroneous. *Insurance Co. of Penn. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir.1990).

### I

■ To succeed in invoking the doctrine of estoppel against St. Paul, the Bank must establish, among other things, that its position changed for the worse as a result of its reliance on Deschene's representation that the St. Paul policy covered bank bad faith actions. *Dagel v. City of Great Falls,* 250 Mont. 224, 819 P.2d 186, 192–93 (1991).[2] Because estoppel is disfavored, the Bank must adduce clear and convincing evidence of this detriment. *Kenneth D. Collins Agency v. Hagerott,* 211 Mont. 303, 684 P.2d 487, 490 (1984). This standard requires evidence sufficiently probative that "there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *McJunkin v. Kaufman & Broad Home Systems, Inc.,* 229 Mont. 432, 748 P.2d 910, 918 (1987) (quoting Mont.Code Ann. § 27–1221 (1985)).

■ With respect to detriment, the district court found that:

at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it; and (6) he must in fact act upon it in such a manner as to change his position for the worse.
*Dagel,* 819 P.2d at 192–93 (citations and quotations omitted).

2. A party seeking to invoke the doctrine of equitable estoppel in Montana must establish six elements:

(1) [T]here must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel

4. It is ... clear that the Bank acted upon the representations by Deschene that the policy afforded coverage for bad faith when it bought and accepted the policy. *While it is easy to speculate that such coverage was not available elsewhere, at a minimum, the Bank lost the opportunity of searching elsewhere for it. . . .*

5. It is clear that the Bank relied upon the assertion by Deschene that for bank bad faith cases they were covered and did not search elsewhere. Rather than action, however, reliance led to non-action, which eventually proved to be costly for the Bank.

6. The Bank's position was worse because of its reliance resulting in its failure to take action to procure coverage.

CR 233 at 12 (emphasis added.). St. Paul argues that these findings are legally insufficient because the Bank is required to show not only that it lost "the opportunity of searching elsewhere for [coverage]," but also that it could have procured such coverage. We agree.

Losing an opportunity to search for any item is detrimental in itself only if one has an interest in the search per se, distinct from any interest one might have in the object of the search. In this case, the Bank was not interested in searching for coverage; it was interested in obtaining coverage. Consequently, it could suffer no detriment solely from the lost opportunity to search; it suffered only if coverage was available elsewhere and if the Bank would have been able to purchase it. *See, e.g., Smith v. Hartford Ins. Group,* 6 F.3d 131, 137 (3d Cir.1993); *Foster v. Johnstone,* 107 Idaho 61, 685 P.2d 802, 809 (1984); *Southland Life Ins. Co. v. Trahan,* 284 S.W.2d 207, 209–10 (Tex.Civ. App.1955), *rev'd on other grounds,* 155 Tex. 548, 289 S.W.2d 753 (1956); *Goldberg v. Colonial Life. Ins. Co. of America,* 129 N.Y.S.2d 637, 639 (N.Y.Sup.Ct.1954); *Wallace v. Metropolitan Life Ins. Co.,* 212 Wis. 346, 248 N.W. 435, 436 (1933); *Professional Underwriters Ins. Co. v. Freytes & Sons Corp.,* 565

So.2d 900, 903 (Fla.App.1990).[3] The lost opportunity to search, absent evidence of the existence of obtainable insurance coverage elsewhere, simply is not a cognizable injury in this context.

The district court made no finding that the Bank could have obtained the coverage it sought elsewhere, and a review of the evidence concerning the availability of coverage demonstrates why. St. Paul's expert witness, Thomas Clarke, opined at one point that the St. Paul policy held by the Bank provided the extent of coverage available to virtually all of the banks in Montana at the relevant time. At another point, on cross examination, he agreed that if the cost of the insurance were not a consideration, the Bank could have found coverage. The Bank makes much of this "admission," by St. Paul's own expert. However, we are not persuaded that Clarke's concession amounts to anything more than exactly what he said it meant: "There is an axiom in the business that anything can be bought if the price is willing to be paid." This observation is insufficient to establish the existence of practical alternative insurance for the purpose of invoking estoppel. Absent any testimony as to what it might have cost to procure the desired coverage, it is entirely possible that the Bank would have been worse off by purchasing coverage at a high price than by doing without.

The Bank presented no expert testimony that a particular policy offered the coverage at issue, and it cited no cases in which a court held that a particular policy provided the coverage. At best, the Bank made a showing that, while no insurance company was representing explicitly that it provided bank bad faith coverage, some were paying their policy limits in response to *Bottrell*-like lawsuits against their insureds. This fact might suggest that these companies thought coverage existed under their policies, but it equally could suggest that they thought it was cheaper to pay the policy limit than to

---

**3.** The cases that American cites for the proposition that detrimental reliance can be established merely by showing that an insured was induced to refrain from acting (e.g., has lost the opportunity to search) are inapposite. They involve instances where an insurer's actions induced an insured not to file a claim until it was too late; in no case was there a dispute as to whether coverage would have been available had the claim been timely filed.

dispute coverage. Furthermore, in each of these cases the plaintiff had brought a variety of claims against the bank, and the verdicts rendered were general verdicts that did not apportion the amount of the judgment among the various claims. It cannot be known which claims precipitated the insurance companies' payments. This showing by the Bank falls short of clear and convincing evidence that alternative coverage was available. The district court clearly erred in finding that the Bank established detriment. St. Paul is not estopped from denying coverage.[4]

## II

■■■ The Bank, in its cross-appeal, argues that even if St. Paul is not estopped from denying coverage, the judgment against St. Paul must be affirmed because there was express coverage under the property damage portion of St. Paul's CGL policy.[5] The Bank contends that the losses of NLL for which it was held liable qualify as "property damage" as that term is defined in the policy:

> Property damage means any damage to tangible property of others that happens while this agreement is in effect. This includes loss of use of the damaged property resulting from the damage. Property damage also includes loss of use of others' property that hasn't been physically damaged if caused by an accidental event that happens while this agreement is in effect.

We review de novo this issue of contract interpretation. *See State Farm Mutual Auto. Ins. Co. v. Davis,* 7 F.3d 180, 182 (9th Cir.1993).

The Bank attempts to find support for its position in the Montana Supreme Court's computation of damages in the underlying suit. The court found that NLL suffered significant damage as a result of The Bank's actions, citing lost profits, judgments against NLL, loss of goodwill, and loss of employees. *Bottrell,* 773 P.2d at 707. However, it had "considerable difficulty" in determining the monetary value of this damage. *Id.* Consequently, it concluded:

> We are faced with the situation where, although there is strong evidence of the fact of damage, in order to establish the amount of lost profits reasonable to be ascribed as damages, the court would have to resort to speculation. The positive figure that we can extract from the record is that the value of the company was lost by reason of the cutoff of its financing, and the figure most favorable to the plaintiffs is $312,000 [representing the value of the company's assets, if sold off piece by piece, at the time of American's actions].

*Id.* at 707–08. The Bank argues that this statement indicates that its liability did not stem from the Bank's lost profits or lost earnings, but rather from a "diminution of the value of fixed assets," and thus was the result of property damage. Even assuming that diminution of the value of fixed assets is property damage within the meaning of the policy (a point not strongly disputed by St. Paul), there is nothing in the record to suggest that the judgment rendered against the Bank was the result of such a diminution.

On any reasonable reading of the passage quoted above, the Montana Supreme Court never concluded that NLL suffered a diminution in the value of its fixed assets. Instead, it concluded that NLL was damaged by lost profits, loss of goodwill, and injury to similar intangibles. The court merely used the value of NLL's assets at the time of the Bank's actions as a figure it could look to as a substitute for directly measuring those damages. Indeed, the Montana Court never made any determination that the value of NLL's assets was diminished. Its figure of $312,000 was the value of NLL's assets at the time of the Bank's tortious conduct; it was not the difference between the value of those assets before the Bank's actions and after the Bank's actions. There is no evidence that the salvage value of the assets

---

**4.** Because we conclude that American failed to meet its burden of establishing detrimental reliance, we express no view concerning St. Paul's additional contention that Montana forbids the creation of insurance coverage by estoppel.

**5.** The Bank also argued before the district court that coverage exists under the personal injury portion of the policy, but it does not renew this argument on appeal.

changed in any way as a result of the Bank's conduct.

The Bank does not gain the support it seeks from *Liberty Bank of Montana v. Travelers Indemnity Co. of America,* 870 F.2d 1504 (9th Cir.1989), and *Lassen Canyon Nursery v. Royal Ins. Co. of America,* 720 F.2d 1016 (9th Cir.1983). In these cases, we were at pains to emphasize that actual damage to tangible property is a prerequisite to a finding of coverage:

> The Montana Supreme Court has addressed the issue of coverage for "property damage," and has determined that this definition means what it says. If there is damage to tangible property, there may be coverage. If not, there is no coverage.

*Liberty Bank,* 870 F.2d at 1509. The Bank has offered no evidence of such damage. The district court did not err in finding that there was no "loss of use of or damage to the fixed assets of NLL."

### CONCLUSION

We affirm the ruling of the district court that there is no express coverage for the *Bottrell* judgment under St. Paul's policy. The Bank's cross-appeal accordingly fails.

St. Paul's appeal, however, succeeds. Because the Bank failed to establish a necessary element of estoppel under Montana law, we reverse the judgment of the district court against St. Paul and remand for further proceedings on St. Paul's claim for reimbursement. This disposition makes it unnecessary for us to address St. Paul's remaining arguments.

AFFIRMED IN PART; REVERSED IN PART and REMANDED. Costs in favor of St. Paul.