**GREATER HOUSTON TRANSPORTA-
TION CO. d/b/a Yellow Cab
Company of Houston, Inc., Petitioner,**

v.

**Kurt Steven PHILLIPS, Respondent.**

No. C–9555.

Supreme Court of Texas.

Dec. 19, 1990.

Rehearing Overruled Jan. 30, 1991.

J. Preston Wrotenbery, Houston, for petitioner.

Clinard J. Hanby, Houston, for respondent.

Before GONZALEZ, DOGGETT, RAY and MAUZY, JJ.

## OPINION

GONZALEZ, Justice.

This is a suit for damages for personal injuries brought by a person shot by a taxi driver after a traffic accident. After a jury trial, the trial court rendered judgment n.o.v. for Greater Houston Transportation Co. d/b/a Yellow Cab Company of Houston, Inc. (Yellow Cab). The court of appeals, holding that Yellow Cab was guilty of negligence, reversed the judgment of the trial court and rendered judgment for the plaintiff. 783 S.W.2d 261. For the reasons stated below, we reverse the judgment of the court of appeals and render judgment for Yellow Cab.

## I. FACTS

Claude McIntyre shot Kurt Steven Phillips during a confrontation that occurred after a minor traffic accident involving a Yellow Cab driven by McIntyre. Phillips was a passenger in a car driven by Gary Rich. After a brief exchange of racial epithets and physical gestures, McIntyre continued down the road without stopping. Rich gave chase but the chase was interrupted when Rich's car hit a curb and blew a tire. After changing the tire, Rich and Phillips proceeded down the same street and spotted the cab at a Bennigan's Restaurant parking lot. They confronted McIntyre and more words were exchanged. Phillips claims that as he and Rich fled, McIntyre opened fire with a handgun causing serious injury to Phillips. However, McIntyre maintains that he was chased by the two men and that fearing for his life, fired in self defense. This lawsuit ensued.[1]

The case was tried to a jury, which found that Yellow Cab, McIntyre, and Phillips were all negligent. Their percentages of negligence were: Yellow Cab, sixteen percent; McIntyre, forty-two percent; and Phillips, forty-two percent. The jury also found that McIntyre was not acting as an employee of Yellow Cab on the occasion in question; that he was operating the cab at the time he shot Phillips;[2] and that Phillips was damaged in the amount of $3,077,500. The trial court disregarded the jury finding that McIntyre was operating the cab when the shooting occurred and held that any negligence of Yellow Cab could not be a proximate cause of Phillips' injuries because the shooting was an intentional act. Thus, the trial court rendered a take-nothing judgment in Yellow Cab's favor and rendered judgment against McIntyre. The court of appeals held that the provisions of the Houston City Code governing taxicabs do not impose absolute liability on a cab company for the torts of its drivers. 783 S.W.2d at 262. We agree. Nevertheless, the court of appeals also held that Yellow Cab was negligent and rendered judgment for Phillips. 783 S.W.2d at 264–65. We reverse this holding because, under the circumstances of this case, Yellow Cab could not foresee harm to other persons and, thus, owed no duty to Phillips.

## II. DUTY

■ Yellow Cab denies that it owed any duty whatever to Phillips. It asserts that it was under no duty to control the actions of McIntyre or otherwise prevent him from shooting Phillips because: 1) the jury found that McIntyre was not acting as an employee of Yellow Cab on the occasion in question; 2) as a general rule, one is under no duty to control the conduct of another;

---

1. Originally Rich was a plaintiff in this suit but dismissed his claim before this case came to trial.

2. Apparently, Phillips chose to rely solely on the employer-employee relationship to impose liability on Yellow Cab. In his pleadings, Phillips asserted that Yellow Cab was estopped from denying McIntyre's employee status and, therefore, could not claim that McIntyre was an independent contractor. Accordingly, the only question submitted to the jury on this point asked whether the driver was an employee of Yellow Cab.

3) the law does not require one to instruct another not to violate the law;[3] 4) Yellow Cab had no duty to anticipate unlawful conduct by McIntyre; and 5) Yellow Cab did not have the right to regulate the conduct of McIntyre.

Phillips contends that Yellow Cab was under a duty to take steps to prevent the shooting because, having created a business enterprise, Yellow Cab was under a duty to act reasonably in managing and operating that enterprise. Phillips' claim is not predicated upon the doctrine of respondeat superior or any other vicarious liability theory. Instead, Phillips contends that Yellow Cab is liable for its own negligence in creating a transportation organization that allowed drivers to carry concealed weapons.

■ The common law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975). The threshold inquiry in a negligence case is duty. *El Chico*, 732 S.W.2d at 311. The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort. *Id.* Moreover, the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex.1983).

■ In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *See Id.* at 309. Of all these factors, foreseeability of the risk is "the foremost and dominant consideration." *El Chico*, 732 S.W.2d at 311. Thus, with these factors in mind, the central question is whether Phillips has presented a basis for imposing a duty upon Yellow Cab when the jury has found that McIntyre was not an employee.

■ Generally, there is no duty to control the conduct of third persons. *Otis*, 668 S.W.2d at 309; Restatement (Second) of Torts § 315 (1965). This general rule does not apply when a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct. *Otis*, 668 S.W.2d at 309; Restatement (Second) of Torts § 315(a) (1965). These include the relationship between employer and employee, parent and child, and independent contractor and contractee under special circumstances. *See Exxon Corp. v. Quinn*, 726 S.W.2d 17, 20 (Tex.1987) (contractee may be liable for an independent contractor's conduct "when he retains the right to control the contractor's work"); *see also* Restatement (Second) of Torts §§ 316–20 (1965).

> However violent the presumption may be that every man knows the law, it nevertheless conclusively prevails.... [I]t would be a strange doctrine of negligence to hold that [a defendant] was negligent in failing to tell [an employee] something that he is in law conclusively presumed to know. No more duty rested upon [the employer] to inform [the employee of all of the provisions of the penal code]. The master is liable for the negligent acts of the servant done within the scope of his employment and in furtherance of the master's business; but certainly negligence of the master cannot be predicated upon his failure to instruct his servant in the law of the land.
>
> *Kasch v. Anton*, 81 S.W.2d 1097, 1100 (Tex.Civ. App.—Austin 1935, no writ).

**3.** Phillips asserts that Yellow Cab violated a duty by failing to admonish its drivers not to carry guns. McIntyre testified he knew it was against the law to carry a concealed weapon, but did so anyway.

There is no such duty in Texas. In Texas, the law recognizes that there is no duty to inform others of the requirements of the law because all persons are presumed to know the law. *See E.H. Stafford Mfg. Co. v. Wichita School Supply Co.*, 23 S.W.2d 695, 697 (Tex.1930). *See also Morris v. Reaves*, 580 S.W.2d 891, 893 (Tex.Civ. App.—Houston [14th Dist] 1979, no writ); *Armstrong Tire & Rubber Co. v. Shearer*, 290 S.W.2d 294, 296 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.).

As one court said:

Having failed to submit questions to the jury regarding control over an independent contractor, and crippled by a jury finding that the driver was not an employee, Phillips argues before this court that the driver was controlled by Yellow Cab. There are several problems with this argument. First, it is inconsistent with the position Phillips took at the trial that the cab driver was an employee rather than an independent contractor. Second, in order to predicate liability on a contractor/subcontractor relationship, it must be shown that the contractor controlled the work of the subcontractor. Third, when the facts are disputed, the issue of control is one of fact that must be decided by the trier of fact. *Quinn,* 726 S.W.2d at 20; *Sparger v. Worley Hosp., Inc.,* 547 S.W.2d 582, 583 (Tex.1977). Phillips simply failed to plead and prove control, one of the necessary elements for liability under this theory.

This case is distinguishable from recent cases where we have imposed a duty on persons or entities to protect third parties. *See, e.g., El Chico,* 732 S.W.2d 306; *Otis,* 668 S.W.2d 307. These cases involve a straightforward application of the *Palsgraf* rule: "[t]he risk reasonably to be perceived defines the duty to be obeyed...." *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928). The rule defines the parameters of the concept of duty found in modern tort law. *See* Kilgarlin & Sterba–Boatwright, *Recent Evolution of Duty in Texas,* 28 S.Tex.L.Rev. 241, 249 (1986). Thus, before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim. Absent such a showing, a defendant is absolved of liability.

In *El Chico,* we imposed a duty upon alcoholic beverage licensees to refrain from serving alcohol to a patron when the licensee knew or should have known that the patron was intoxicated. 732 S.W.2d at 314. We said, "[t]he risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee *knows* will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattle-snake in a shopping mall." *Id.* at 311 (emphasis added). The alcoholic beverage licensee's duty arose because of the clear and direct connection between the licensee's activity (the serving of alcohol to an intoxicated patron) and the injury to the motoring public. In other words, the licensee negligently created a foreseeable and dangerous situation for other drivers by serving alcohol to an intoxicated person who would be driving. Given the common knowledge of the effects of alcohol and the direct nature of the defendant's activity, it could be said with certainty that injuries resulting from such activity were foreseeable.

In *Otis,* we held that when, because of an employee's incapacity, an employer exercises control over an employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others. 668 S.W.2d at 311. In that case, an employer, finding an employee in an "extreme state of intoxication," suggested that the employee go home and escorted him to the parking lot. 668 S.W.2d at 308. We imposed the duty upon the employer, not because of the mere knowledge of the intoxication, but because of the employer's *negligent exercise of control* over the employee. *Id.* at 309–11. The defendant acted affirmatively in sending the drunken employee home and created an unreasonable and foreseeable risk of harm to others.

The record shows that Yellow Cab had been operating in the City of Houston for nearly twenty years and, in any given year, it is involved in approximately 1000 traffic accidents. During this period there was only one prior incident involving the use of a weapon and the driver in that case was exonerated of any wrongdoing. Thus this case is distinguishable from those in *El Chico* and *Otis.* Here, the injury is not foreseeable. To hold that Yellow Cab created a dangerous situation by failing to admonish its drivers not to carry guns is an unwarranted expansion of *El Chico* and *Otis.* Given the facts of this case, we

cannot conclude that the risk of harm (injury) to others was foreseeable. We hold that as a matter of law, under these facts, that the cab company had no duty to warn its cab drivers not to carry guns.

For all of these reasons the judgment of the court of appeals is reversed and judgment is here rendered for Yellow Cab.

DOGGETT, Justice, dissenting.

What is the teaching of this case? Legal scholars and practitioners who ponder this question, recognizing that the court reaffirms but then fails to˙ follow *El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex.1987), will ultimately conclude that it stands solely for the proposition: "here, the cab company wins!" Under the facts presented, the result-oriented nature of the opinion is somewhat understandable. With taxi operators daily exposed to the dangers of Houston's ever rising crime, I personally empathize with Yellow Cab. It is perhaps only natural that the drivers would take steps to protect themselves and that the company would believe that there is little it should do to foreclose this method of self-help. Had I been selected as a juror I could well have cast my personal vote for the defendant.

However, the people of Texas elected me to be more than a juror in one case. As a judge, I must interpret the established law fairly and recognize that a holding set forth in one context may well control many less compelling and totally different factual situations.

The court of appeals judiciously respected precedent and correctly noted that "the duty of care arises from the probability of injury to one who may reasonably be foreseen as likely to be subject to such injury." 783 S.W.2d at 263. Today's opinion recites this same basic principle that liability should be imposed when "sufficient evidence indicat[es] that the defendant knew or should have known that harm would eventually befall the victim." Maj.Op. at 526. Thereafter, it unfortunately ignores evidence presented to the only properly constituted jury regarding Yellow Cab's pre-incident awareness that drivers carried guns in their cabs and that many traffic accidents resulted in violence.[1] Despite this knowledge, the company's president made a "conscious decision" to avoid discussion of the subjects of weapons and alternative methods of self-protection in its operator training course or otherwise. Clearly, this constitutes some evidence to support a reasonable jury's determination that, by failing to take some action to avoid injury to third persons, "the cab company was itself negligent." 783 S.W.2d at 263.

The conclusion that "the law recognizes that there is no duty to inform others of the requirements of the law" both misstates prior holdings[2] and evades the real issue. Maj.Op. at n. 3. If an actor contributes to create a situation posing harm to others, there is a legal duty to prevent it without regard to whether a violation of a

---

1. Violence associated with traffic accidents in Houston has become so common that it is referred to by the police with the shorthand term "traffic rig rag." (S.F. vol. VI, at 165). Testimony from Ken Suprenant, claims manager for Yellow Cab, also revealed:

   Q: And, sir, as a corporate representative of Yellow Cab, do you think it's an appropriate area of concern for the company to be worried about third parties being shot by cabdrivers?
   A: Yes.

   *   *   *   *   *   *

   Q: Don't you know, sir, there's a liability risk in a situation where you got that kind of contact between a cabdriver and a third party in a collision and unhappiness that there is a high risk of someone being shot if one of the parties has a gun?

A: I would say there is a risk, yes.

   *   *   *   *   *   *

Q: What are you doing about the risk of third parties being shot by cabdrivers in that situation?
A: What am I doing.
Q: What is the company doing that you're aware of? What is the company doing?
A: I'm not aware of anything.
Q: Of anything?
A: No.
(S.F. vol. XIV, at 76–78).

2. The alleged supporting authorities cited thereafter in the text of the court's opinion stand only for the more limited proposition that all persons are presumed to know the law.

penal statute is involved. Driving while intoxicated is illegal, but the dangers arising from it were the focus of *El Chico*. Yellow Cab's "duty" was to take some action to prevent foreseeable injury to third persons from conduct over which it could exercise some control.

Once again ignoring evidence that the jury had for consideration, the court implies that all Yellow Cab could have done about traffic shootings was to "admonish" drivers regarding weapons. Maj.Op. at 526. Far more was possible. Yellow Cab could have added to its existing training curriculum on post-accident procedures instructions on dealing with the known risks of traffic incident violence. Random inspections and driver suspensions for firearm possession could have been initiated.[3]

The court's only apparent attempt to distinguish *El Chico* is by noting that there the licensee "created a foreseeable and dangerous situation for other drivers by serving alcohol to an intoxicated person who would be driving." Maj.Op. at 526. This is an illusory distinction. Here, Yellow Cab was aware that it was placing vehicles with armed drivers into the public stream of commerce—not unlike the characterization described in *El Chico*, 732 S.W.2d at 311, of "setting loose a live rattlesnake in a shopping mall." Evidence established that the "common knowledge of the effects" of traffic incidents involving weapons and "the direct nature of the defendant's activity" in supplying the cabs and training the drivers, made it a "certainty that injuries [would] result[ ] from such activity." Maj.Op. at 526. How this case differs legally from *El Chico* remains a mystery about which the court offers no real hints.

Under the rubric of "no duty," the court essentially concludes that Yellow Cab has no legal responsibility to act in a reasonable and prudent manner with reference to the situation in question. On another day we may learn how many more shootings are required before a jury can be permitted to evaluate the reasonableness of this company's decision. A dozen people killed or maimed? Perhaps not; under its narrow holding, today's opinion may itself be sufficient additional notice for a court to impose a duty on the company to avert injury to third persons. I would not wait for more violence, more shootings, injuries and deaths to occur before permitting a cross section of the people of Harris County, convened as a jury, to demand preventive action. It would be better to tell cab companies today that they risk being held accountable by their neighbors tomorrow to encourage prevention and thereby decrease litigation. I dissent from this opinion which can only be interpreted as an aberration.

RAY and MAUZY, JJ., join in this dissent.

---

**3.** At least one claims manager for Yellow Cab testified that he had previously found a gun in a taxi. (S.F. vol. XII, at 93).