Harry DILLING, Appellant,

v.

NATIONSBANK, N.A., f/k/a NCNB
National Bank, Appellee.

No. 10–94–067–CV.

Court of Appeals of Texas,
Waco.

March 29, 1995.

Rehearing Overruled May 17, 1995.

Samuel M. Stricklin & George H. Tarpley, Sheinfeld, Maley & Kay, P.C., Dallas, for appellant.

Carlyle H. Chapman, Jr. & Marc Peach, Chapman & Reese, P.C., Dallas, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Appellant Harry Dilling was defrauded through a sham investment scheme concocted by a teller formerly employed by appellee NationsBank named Carolyn Price, a man

named Fritz McMillon, and several others. They lured Dilling into investing in a fraudulent business known as McMillon Enterprises, Ltd., or "MEL". Apparently the scheme contemplated Dilling making payments to McMillon, who would then hand them over to Price, who would deposit them in a Nations-Bank account. She would later take the funds from this account and issue cashier's checks which would be given by McMillon to Dilling, who was told by McMillon that the checks represented the profits from his initial investments. Once Dilling discovered that he had been swindled, he brought suit against NationsBank, Price, McMillon, and MEL, to recover his losses and to seek punitive damages. Default judgments were entered against McMillon and MEL. Price was found liable to Dilling after a bench trial for defrauding and conspiring to defraud him. Judgments were entered by the trial court against Price, McMillon, and MEL, jointly and severally, in the amount of $595,-000 in actual damages, $237,249.17 in prejudgment interest, and $1,190,000 in punitive damages. The trial court, however, entered a take-nothing summary judgment in favor of NationsBank.

In asserting the trial court erred in granting summary judgment for NationsBank, Dilling through four points of error contends: (1) NationsBank, as Price's principal, is vicariously liable for Price's fraudulent acts under a theory of apparent authority; and (2) NationsBank was recklessly negligent in employing Price as a teller. We reverse and remand for a trial on the merits of both causes of action.

The standards for reviewing a motion for summary judgment are well established. They are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–549 (Tex.1985). With these principles in mind, we look to the summary-judgment proof.

Dilling was first lured into the scam when McMillon persuaded him to invest in MEL, a business ostensibly organized to engage in the purchase and sale of rental cars. Upon obtaining several initial sums from Dilling, McMillon turned them over to Price who deposited them in an account at Nations-Bank. Deposit slips were then issued by Price to reflect the amount of money deposited, and these deposit slips were at some point shown to Dilling. After these deposits were made, a sum greater than the value of these initial investments was later returned to Dilling by McMillon through NationsBank cashier's checks generated by Price, apparently to instill confidence in Dilling in the viability of MEL. Some of the cashier's checks were backed by sufficient funds and some were not. The cashier's checks were represented to be profits on his initial investments. The plan worked and Dilling ended up making several large-sum investments in MEL. In total, he was induced by Price and McMillon into paying them $595,000 that was never returned.

Dilling argues that the deposit slips and cashier's checks generated by Price in her capacity as a teller for NationsBank provide the means for ascribing vicarious liability to NationsBank under the theory of apparent authority. Included in the summary judgment evidence considered by the trial court was a sworn affidavit from Dilling, indicating that he would not have invested in MEL the large sums that he did had he not received from McMillon the several NationsBank cashier's checks and seen the several deposit slips. Dilling stated in the affidavit that he believed from the NationsBank cashier's checks that sufficient funds were used by McMillon to purchase them; he learned later that this was not true. Dilling made these assertions despite never having any direct contact with Price or anyone else from NationsBank.

NationsBank defended itself on several grounds. It contended it could not be vicariously liable for Price's frauds because Price did not have actual authority to issue cashier's checks in excess of $2500 absent approval from a supervisor and that Price exceeded her authority by generating a cashier's check payable to Dilling in excess of $500,000. It also argued that neither could it be vicariously liable under a theory of apparent authority because Texas law does not allow third parties to recover from an agent's principal for frauds perpetrated against them by the agent. The trial court, in granting Nations-Bank summary judgment, apparently agreed with both arguments.

On appeal Dilling foregoes his actual authority argument and relies, instead, solely upon an apparent authority theory to ascribe vicarious liability to NationsBank. Accordingly, we will only consider the apparent authority argument.

 Apparent authority is a viable doctrine in Texas: it is the power of an agent to affect the legal relations of another person by transactions with third persons. *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984). It may arise either from a principal knowingly permitting an agent to hold himself out to third persons as having the authority the third parties reasonably attribute to him or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority that would lead a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Id.* An agent acting within the scope of his apparent authority binds a principal as though the principal himself has performed the action taken. *Id.*[1]

 The specific question before us is whether an agent, clothed with the principal's apparent authority, can bind a principal for his fraudulent acts committed within the scope of his employment but without actual authority and without any benefit to the principal. We conclude that he can.

The rule was clearly stated in the opinion of the Fifth Circuit in *Bankers Life Ins. Co. of Nebraska v. Scurlock Oil Co.*, 447 F.2d 997, 1005–1007 (5th Cir.1971) (applying Texas law).

The facts in *Bankers*, briefly stated, involve a principal, Bankers, who owned a mortgage on certain oil leases in East Texas and was entitled to receive the revenues from these leases. Bankers' mortgagor was a man named Jordan, the agent, with whom Bankers had contracted to continue operating the leases on Bankers' behalf. *Id.* at 998. Scurlock, the third party, purchased oil from Jordan at Jordan's storage tanks. Scurlock was under contract with Bankers to pay Jordan, depending on the circumstances of the purchase, for some types of oil, for which Jordan would later account to Bankers, and to pay Bankers directly for other types of oil. *Id.* When Jordan delivered to Scurlock the oil at issue in the case, he falsely represented to Scurlock that it was a type of oil for which Scurlock should pay him rather than Bankers. In actuality, it was a type of oil for which Bankers should have been paid directly. *Id.* at 998–99.

Relying on Jordan's misrepresentations, Scurlock paid Jordan rather than Bankers. *Id.* Jordan never accounted to Bankers for the oil payments he received. *Id.* at 999. Bankers sued Scurlock for breach of contract and conversion. *Id.* The trial court found Scurlock liable under both theories of recovery. *Id.* The Fifth Circuit reversed, finding him liable under neither. *Id.*

In concluding that Bankers was vicariously liable for Jordan's frauds, the court cited two public policy concerns in support of the rule that principals must answer for the fraudulent acts committed by their agents within the scope of their employment, even where the principal derives no benefit from the fraudulent act. First, the court wrote:

> The underlying purpose of the rule which binds the principal by the fraudulent acts

---

1. The three essential elements required to establish an apparent authority are: (1) there must be a reasonable belief in the agent's authority; (2) the belief must be generated by some holding out or neglect of the principal; and (3) the party must justifiably rely on the authority. *Garza v. Williams Brothers Construction Co., Inc.*, 879 S.W.2d 290, 294 (Tex.App.—Houston [14th Dist.] 1994, n.w.h.).

of its agent in civil cases is obviously to impose liability where it may best be heeded. *See United States v. Ridglea State Bank,* [357 F.2d 495, 499 (5th Cir.1966) ]. Imposition of such liability on principals encourages them to be more careful in selecting their agents. Principals should not be able to turn frauds and cheats loose on the public and expect to be immune from the consequences of these agents' misdeeds.

*Id.* at 1006. The second public policy concern to support the court's judgment was that:

[T]he third party purchaser usually has no reason to expect the agent, who had been endowed with all the indicia of authority, to use that authority to commit fraud.

*Id.* at 1007. We agree with the Fifth Circuit's statement of the rule and the reasons cited in support of it.

The facts in *Bankers* and in the instant case are similar. Both cases involved a principal who had expressly authorized its agent to execute certain business transactions with third parties on the employer's behalf. *Id.* at 1004. Both agents then abused the actual authority given them to perpetrate frauds against third parties as well as their principals. *Id.* at 1004–05. The frauds committed by both agents were within the scope of their authority. Jordan had the actual authority to collect from Scurlock monies spent by Scurlock to purchase oil indirectly from Bankers; Jordan then used this authority to collect, and keep, monies spent by Scurlock that should have been paid directly to Bankers. *Id.* Price had the actual authority to sell cashier's checks; Price then, in furtherance of a scheme to defraud Dilling, used this authority to issue cashier's checks even though they were purchased with insufficient funds.

NationsBank attempts to distinguish *Bankers* on several grounds. First, it argues the Fifth Circuit only found Bankers liable to Scurlock because they had a contractual relationship and, since there was no contractual or any other such relationship between NationsBank and Dilling, the holding in *Bankers* is inapplicable. Second, it contends the *Bankers* holding only applies to circumstances where the principal, after having been defrauded by the agent's failure to account to him for monies given to the agent by a third party, attempts to recover these monies from the third party. And third, it maintains that the holding in *Bankers* requires a finding that the fraudulent acts were authorized, committed with the principal's knowledge, and done for the benefit of the principal before the principal may be found vicariously liable. We find no merit in any of these distinctions.

■■■ The lack of a contractual, fiduciary, or any other such relationship between the defrauded third party and the putative principal should have no bearing on whether the principal is vicariously liable for his agent's frauds. In fact, the public policy considerations identified by the *Bankers* court actually more firmly support a finding of vicarious liability under the facts before us than those in *Bankers* because the third party here, Dilling, had no direct contact with NationsBank and, therefore, could only rely upon the validity of the agent's actions in issuing the cashier's checks given to him. The third party in *Bankers,* Scurlock, at least had the opportunity to meet with the principal and ascertain the scope of the agent's authority. Dilling had no such luck. Third parties such as Dilling may have an affirmative duty to investigate the true scope of the actual authority of the agent with whom they are dealing, *see Gunn v. Schaeffer,* 567 S.W.2d 30, 33 (Tex.Civ.App.—El Paso 1978, no writ); however, no summary judgment evidence was presented by NationsBank to indicate that Dilling was lax or negligent in determining from McMillon whether the check was properly issued by a NationsBank teller.

■■■ In further support of this distinction, NationsBank argues that, because it had no direct contact with Dilling, who received his cashier's checks from the hands of McMillon, it cannot be held liable for Price's frauds. *See Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981) (One seeking to charge the principal through the apparent authority of an agent must establish conduct by the principal that would cause a reasonably prudent person to believe that the agent

has the authority that he purports to exercise.). But a principal can represent to third parties that its agent possesses apparent authority to perform certain actions on behalf of the principal without actually ever meeting or coming into direct contact with the third party. *See Campbell v. Hamilton,* 632 S.W.2d 633, 634–35 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

■ There is no merit to NationsBank's attempt to distinguish *Bankers* on the ground the *Bankers* case involved a principal trying to recover a payment for goods from the third party while the facts in the instant case involve a third party attempting to recover from a principal. The *Bankers* court, in reaching its decision, relied upon several Texas cases which imposed vicarious liability upon a principal for his agent's frauds in situations where the defrauded third party sued the principal to recover his losses. *Bankers,* 447 F.2d at 1005–06 (*discussing Wardlaw v. Pace,* 66 S.W.2d 350 (Tex.Civ. App.—Eastland 1933, no writ); *W.C. Biggers & Co. v. First Nat'l Bank,* 29 S.W.2d 841 (Tex.Civ.App.—Texarkana 1930, writ dism'd)). It is true that the *Bankers* court believed the facts of its case compelled a finding of vicarious liability more so than situations where the third party is attempting to recover from a principal; nevertheless, the court noted its reliance upon the principles enunciated in *W.C. Biggers* and *Wardlaw* in reaching its decision, and we believe the rule to be the same in either case. *See Bankers,* 447 F.2d at 1007.

■ NationsBank's purported distinction of *Bankers* on the ground that Price's actions were (1) not authorized, (2) not done with the principal's knowledge, and (3) not done for the benefit of the principal is also without merit. NationsBank cites to footnote 12 of *Bankers* for the proposition that a principal cannot be held vicariously liable for its agent's frauds absent proof of each of these three criteria. *Id.* at 1003–04 n. 12. But footnote 12 of *Bankers* is referring only to cases where the plaintiff is attempting to impute punitive liability to the principal for the agent's wrongs, whether they were frauds, assaults, or some other criminal act.

*Id.* The plaintiff in this case, at least under his apparent authority argument, is not trying to attribute a punitive liability to NationsBank; he is merely attempting to establish grounds for obtaining actual damages. Therefore, NationsBank's third attempt to distinguish *Bankers* is without merit.

Having concluded that principals are vicariously liable for the fraudulent acts of their agents committed within the scope of their apparent authority, we sustain Dilling's points of error in reference to his apparent authority argument.

Dilling next asserts that NationsBank should be liable for punitive damages for its reckless hiring of Price. *See Southwestern Bell Tel. v. Wilson,* 768 S.W.2d 755, 764 (Tex.App.—Corpus Christi 1988, writ denied) (Punitive damages may be awarded against a principal if the agent was unfit and the principal was reckless in employing him.). In support of his contention, he argues the summary judgment evidence raised an issue of fact in that Price had a criminal record for fraud at the time NationsBank began to employ her and that NationsBank failed to investigate her background at this time. NationsBank did not refute this allegation. Instead, it argued that it owed no duty to Dilling as the issuer of the cashier's checks and deposit slips and that Price's actions were not the proximate cause of Dilling's injuries.[2]

■ The common law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from that breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden guarding against the injury, and the consequences of placing the burden on the defendant. *Id.* Of all these factors, foreseeability of the risk is "the foremost and domi-

---

**2.** The record does not indicate whether the cashier's checks cashed by Dilling were actually made payable to him or whether some other party endorsed the checks over to him.

nant consideration." *Id. (quoting El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).

■■■■ NationsBank contends it bore no duty to Dilling because it was not foreseeable that its teller would issue fraudulent cashier's checks. This argument must fail because of the ease with which cashier's checks are passed, virtually as a cash equivalent, in the business community. *See Arline v. Omnibank, N.A.*, 894 S.W.2d 76, 78 (Tex.App.—Houston [14th Dist.] n.w.h.); *see also Community Nat'l Bank v. Channelview Bank*, 814 S.W.2d 424, 427 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Wertz v. Richardson Heights Bank and Trust*, 495 S.W.2d 572, 574 (Tex.1973) (A cashier's check is defined as a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance and not subject to countermand by either its purchaser or the issuing bank.). The nature of a cashier's check is such that when a bank issues one, it simultaneously guarantees payment to the payee or to his endorsees. *Arline* at 80; *University State Bank v. Allied Conroe Bank*, 712 S.W.2d 193, 194 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Banks are permitted to raise no defenses against their payment. *Arline* at 80.[3] Given the ease with which cashier's checks may be passed as the equivalent of cash, we hold that banks should reasonably foresee the possibility of its tellers issuing fraudulent cashier's checks to unsuspecting innocent third parties, who accept the check knowing that the issuing bank has from the moment of issuance guaranteed payment to him. *See id.*[4]

■■■■ NationsBank asserts its unforeseeability argument on another front, namely, that it could not foresee that Price would engage in criminal fraudulent conduct at the expense of a third party. However, as was discussed in reference to Dilling's apparent authority argument, a principal may be held vicariously liable under the theory of apparent authority for fraudulent acts committed by its agent within the scope of his employment. *See Cecil v. Zivley*, 683 S.W.2d 853, 856–857 (Tex.App.—Houston [14th Dist.] 1984, no writ). Aware that it may be liable for the fraudulent acts of its agents, NationsBank should have reasonably foreseen that Price, as a teller, might abuse the authority entrusted to her to defraud a third party.

■■■■ NationsBank argues that the actions of Price were not the proximate cause of Dilling's injuries. Proximate cause is that cause which, in a natural and continuous sequence, unbroken by new and independent causes, produces the injury and without which the injury could not have occurred. *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). NationsBank refers to deposition testimony given by Dilling where he stated that he was induced to invest in the scheme by Tom Russell, Sr., Tom Russell, Jr., McMillon, and perhaps some other men, none of whom had a relationship, as far as Dilling knew, with NationsBank. From this testimony NationsBank concludes that Dilling admitted that he relied exclusively upon representations other than those made by NationsBank in deciding to invest in MEL. However, the summary judgment evidence also includes an affidavit from Dilling in which he stated that he only invested in MEL the large sums that he did because of the deposit slips and cashier's checks from NationsBank. Accordingly, a fact issue has arisen on proximate cause which the trier of fact should be allowed to decide.

---

3. See the Fourteenth Court's discussion of the split among the states on an issuing bank's ability to raise defenses to the payment of cashier's checks in *Arline v. Omnibank, N.A.*, 894 S.W.2d 76, 78–80 (Tex.App.—Houston [14th Dist.] n.w.h.).

4. Our conclusions about the representations NationsBank made to Dilling in issuing the cashier's checks are not the same with regard to the deposit slips. We treated the cashier's checks in the manner we did because of their nature as a negotiable instrument. Deposit slips, however, are not negotiable instruments. Deposit slips are issued by banks merely to provide a depositor with a receipt in acknowledgment that the bank had received his funds. Accordingly, NationsBank could not possibly have foreseen that a third party would rely upon the deposit slips as an indication of the solvency of the account's owner.

Because we conclude that NationsBank bore a duty to Dilling and that a fact issue exists concerning whether Price was the proximate cause of Dilling's injuries, we sustain those points of error in reference to Dilling's reckless hiring argument. The cause is reversed and remanded for a trial on the merits.