NATIONSBANK, N.A. f/k/a NCNB National Bank, Petitioner,

v.

Harry DILLING, Respondent.

No. 95–0605.

Supreme Court of Texas.

May 10, 1996.

Carlyle H. Chapman, Jr., John H. McElhaney, Julia A. Simon, Dallas, for Petitioner.

Samuel M. Stricklin, George H. Tarpley, Robert J. Taylor, Dallas, for Respondent.

PER CURIAM.

We must determine whether a bank is vicariously liable for the fraudulent acts of a bank teller whose participation in an investment scheme caused damages to a third party. We also must decide whether the bank is directly liable to the third party for negligently employing the teller, who improperly issued cashier's checks that the bank hon-

ored. We hold that vicarious liability does not attach to an employer in the absence of evidence that its employee was acting within the scope of her actual or apparent authority, and that a bank owes no duty to protect a third party from making investment decisions in reliance on cashier's checks that were improperly issued by a bank teller but were honored by the bank. We reverse the judgment of the court of appeals, 897 S.W.2d 451, and render judgment for NationsBank.

After serving time in federal prison for bank fraud, Fritz McMillon formed McMillon Enterprises, Ltd. (MEL), a business purportedly organized to buy and sell rental cars. Carolyn Price, a NationsBank teller, was also involved in MEL's operations. Price herself had previous criminal convictions for theft and welfare fraud.

McMillon met Harry Dilling and offered Dilling an opportunity to invest in MEL. This "opportunity" was nothing but a scheme concocted by McMillon, Price, and others to defraud Dilling. Although Dilling knew that McMillon had served time in federal prison for bank fraud, he nevertheless made an initial investment in MEL.

In furtherance of the scheme to defraud Dilling, Price took a number of actions that her employer NationsBank did not authorize. Price accepted an MEL check from McMillon against which she issued several cashier's checks in amounts exceeding the value of the MEL check. NationsBank's internal policy required employees to obtain supervisory approval before issuing cashier's checks in amounts greater than $2,500. Although the value of the cashier's checks Price issued exceeded $2,500, Price did not seek approval. Price also fabricated deposit slips reflecting amounts deposited in MEL's account.

McMillon showed Dilling the deposit slips as evidence that MEL was a legitimate company with assets. In an effort to gain Dilling's confidence, McMillon repaid Dilling's initial investment plus a return on that investment with the cashier's checks issued by NationsBank. Satisfied by his initial "profit," Dilling made several larger investments in MEL. Dilling was not a NationsBank customer and never met with Price or any other NationsBank representative.

The fraudulent investment scheme succeeded for a time: Dilling invested an additional $595,000 in MEL. None of this amount was repaid. Dilling ultimately realized that he had been deceived and filed suit against McMillon, Price, and MEL for fraud and conspiracy, and against NationsBank for fraud, conspiracy, and negligence. The trial court rendered judgment against Price, McMillon, and MEL, but rendered a take-nothing summary judgment in favor of NationsBank. Dilling appealed the judgment for NationsBank on two grounds, arguing that (1) NationsBank, as Price's employer, is vicariously liable for Price's fraudulent acts under an agency theory based on apparent authority and (2) NationsBank is liable for negligently employing Price as a teller because she had prior criminal convictions. The court of appeals agreed, reversed the trial court's judgment, and remanded these issues for disposition. 897 S.W.2d at 458.

NationsBank contends that the court of appeals erred in holding it vicariously liable for Price's fraudulent conduct because NationsBank did nothing that would allow Dilling to conclude that Price was acting with NationsBank's apparent authority in committing her fraudulent acts. NationsBank also argues that it owed no duty to Dilling as a matter of law because Dilling was not a NationsBank customer and it was not foreseeable that Dilling would rely on cashier's checks issued by NationsBank in making an investment decision.

The court of appeals incorrectly framed the issue of vicarious liability as whether Price, "clothed with [NationsBank's] apparent authority," could bind NationsBank for her fraudulent acts committed within the scope of her employment. 897 S.W.2d at 454. This question presupposes that Price, by issuing cashier's checks, had apparent authority to make representations about the soundness of Dilling's investment.

To establish apparent authority, one must show that a principal either know-

ingly permitted an agent to hold itself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority. *Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex.1984). A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority. *Southwest Title Ins. Co. v. Northland Bldg. Corp.,* 552 S.W.2d 425, 428 (Tex.1977). *See also Trahan v. Southland Life Ins. Co.,* 155 Tex. 548, 289 S.W.2d 753, 755 (1956) (holding that it is the principal's conduct, attitude, and knowledge that determines whether an agent had apparent authority).

 NationsBank correctly argues that it cannot be held vicariously liable for Price's fraud on a theory of apparent authority because it established that it never took any action that would lead a reasonably prudent person to conclude that it had authorized Price to make representations regarding an investment in MEL. One seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that it purports to exercise. *Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981). The principal must have affirmatively held out the agent as possessing the authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *See Douglass v. Panama, Inc.,* 504 S.W.2d 776, 778–79 (Tex. 1974).

Under these facts, the issuance of cashier's checks by NationsBank could not, as a matter of law, have led Dilling to believe that Price was clothed with Nationsbank's authority to make representations about the soundness of an investment in MEL. The only representation that Dilling could glean from NationsBank's issuance of cashier's checks is that NationsBank would honor those checks. The court of appeals incorrectly assumed that because Price was "clothed with [NationsBank's] apparent authority" to issue cashier's checks, her actions of improperly issuing checks imputed a representation about the risks of investing in the business of a NationsBank customer who received these checks. 897 S.W.2d at 454–56.

Nor did NationsBank make any representations about the soundness of an investment in MEL when Price manufactured deposit slips. A receipt from a bank indicating a deposit into an account is not a representation by the bank as to the soundness of a particular investment.

We disagree with the court of appeals that this case is similar to *Bankers Life Insurance Co. v. Scurlock Oil Co.,* 447 F.2d 997, 1005–07 (5th Cir.1971), because the fraudulent actions committed by the agent in *Bankers Life,* unlike those of the agent in this case, were done within the scope of its apparent authority. The court in *Bankers Life* noted that a principal may be held liable for the fraudulent misrepresentations of its agent "so long as the third person reasonably believed the agent was acting within the scope of his authority." *Bankers Life,* 447 F.2d at 1005 n. 12. The *Bankers Life* court went on to conclude that the agent in that case "undisputedly" possessed the principal's authority to deliver and sell oil and that the agent committed fraud in the delivery and sale of that oil. *Id.* at 1004–05. In this case, as already noted, Price was without the apparent authority to make representations regarding Dilling's investment in MEL.

 We turn now to Dilling's negligent hiring claim. In the trial court, Dilling asserted both negligent hiring and negligent supervision claims against NationsBank. However, in its appeal of the trial court's summary judgment in favor of NationsBank, Dilling asserted only that NationsBank was negligent or reckless in employing Price, who had a criminal record. NationsBank correctly argues that it cannot be liable to Dilling under a theory of negligent hiring on these facts. In a negligence case, the threshold inquiry is whether a duty exists as a matter of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). In

making this determination, the court considers risk, foreseeability, and likelihood of injury, weighed against the social utility of the actor's conduct. *Id.* The court also considers the magnitude of the burden of guarding against the injury, and the consequences of placing this burden with the defendant. *Id.* In the absence of foreseeability, there is no duty. *See id.*

Dilling argues that NationsBank was negligent in hiring Price because it was foreseeable that Price would abuse her position as a bank teller to issue cashier's checks in a scheme to defraud innocent third parties. While it may have been reasonably foreseeable to NationsBank that a teller might exceed her actual authority by issuing a cashier's check in excess of $2,500 without obtaining supervisory approval, this means only that NationsBank would have no defense against payment of the check. Here, however, Dilling does not allege that NationsBank failed to honor the cashier's checks. The fact that it may have been foreseeable that a negligently employed teller would improperly issue checks does not make it foreseeable that a third party who never came into direct contact with the teller would rely on the issuance of cashier's checks to make investment decisions. We therefore hold that NationsBank established as a matter of law that it owed no duty to Dilling.

\* \* \* \* \* \*

Accordingly, pursuant to Tex.R.App.P. 170, this Court grants the application for writ of error, and, without hearing oral argument, reverses the judgment of the court of appeals and renders judgment for NationsBank.