COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

 

NO. 2-06-051-CV

 

 

 

DONNIE
MELTON,                                                                APPELLANT

D/B/A DONNIE=S
WRECKER 

&
BODYSHOP                                                                                     

                                               

                                                   V.

 

KARL KLEMENT FORD, L.P.                                                      APPELLEE

 

------------

 

FROM
THE COUNTY COURT AT LAW OF WISE COUNTY

 

------------

 

 MEMORANDUM OPINION[1]

 

------------

I.  Introduction








This is an appeal from a suit
on a sworn account.  The trial court
entered a judgment awarding Appellee Karl Klement Ford, L.P. (AKlement@) $6,260.24,
an amount representing the delinquent balance due on an open account that
Appellant Donnie Melton, d/b/a Donnie=s Wrecker & Bodyshop (AMelton@) used to
purchase parts from Klement.  In two
issues, Melton complains that the trial court abused its discretion by denying
his motion for continuance and that the evidence is legally and factually
insufficient to show that Klement sold and delivered the parts to him.  We will affirm.

II.  Factual and Procedural Background

Melton owns a wrecker service
and body shop business in Wichita Falls named ADonnie=s Bodyshop.@  The business is contained in
two separate buildings located about 300 yards from each other.  Klement sells auto parts and accessories in
Decatur and manages approximately 1,400 parts department wholesale accounts.  

Sometime around September
2002, Klement approved Melton=s application for credit with its parts department.  The account was set up under the name of ADonnie=s Wrecker
and Bodyshop,@ and the
business was billed under the same name. 
Klement assigned Melton a customer number, which identifies Melton=s account, and Melton used a tax identification number assigned to him
by a Texas sales and use tax permit to avoid paying sales tax on the purchased
parts.  Melton=s customer number appears on invoices produced by Klement that
identify the transactions. 








It was a common course of
business for Melton=s employees
to operate the body shop, which included ordering parts from Klement, while
Melton handled managerial issues associated with the business.  Klement delivered parts ordered on the
account to the body shop, not directly to Melton.  

Although Melton=s payments on the account were generally timely, the balance on the
account became thirty days past due on six or seven different occasions during
the last few years, which prompted an employee in Klement=s parts department to visit Melton=s wrecker office in order to collect the balance due.  On these occasions, an employee in the
wrecker office would issue a check for the past due amount. 

In March 2005, Melton=s account had a delinquent balance of $8,294.75.   A Klement employee, Charles Goen, visited
the business and was directed for the first time to collect the past due amount
from the body shop instead of the wrecker office.  At the body shop, Goen spoke to Jason
Beavers, a body shop employee, who said that he could not pay the balance
due.  Beavers indicated, however, that he
had a number of returns, which Goen credited to the account, lowering the balance
to $6,260.24. 








Klement eventually sued
Melton to collect the balance due on the account because Melton refused to pay
it.  Attached to Klement=s petition asserting a suit on sworn account are a number of invoices
evidencing purchases made on Melton=s account with Klement.  The
invoices are dated from January 26, 2005 through April 1, 2005, and each
invoice contains the same customer number that Klement had assigned to
Melton.  They also contain the same AFTE,@ or federal
tax identification number. 

At trial, which was to the
bench, Melton testified that Beavers was responsible for the debt owed on the
Klement account because he and Beavers had entered into a Alease-purchase@ agreement
sometime in October 2004. According to Melton, Beavers agreed to Alease-purchase@ the body
shop for one year.  If Beavers made all
of the monthly payments, then Melton would consider it a down payment on the
purchase of the body shop.  Melton
testified that he had contacted all of his suppliers, including Lonny Leming, a
Klement employee in the parts department who was familiar with Melton=s account, and told them that he would no longer be responsible for
any body shop debts because of the lease-purchase agreement with Beavers.  Beavers executed an assumed name certificate
in Wichita County under the name of ADonnie=s Paint and
Body Shop@ and had
checks made with his name printed under the business name ADonnie=s Paint and
Body Shop.@   








During the period that he
lease-purchased the body shop from Melton, however, Beavers ordered parts on
Melton=s Klement account, as evidenced by the invoices attached to Klement=s petition.  Beavers used Melton=s customer number and sales tax number in making the purchases.  Melton=s arrangement with Beavers ended in mid-April 2005 because Beavers
fell behind on his monthly payments. 
Melton then took the body shop Aback over@ after he
had Arepossessed it.@ 

According to Klement
employees, Klement did not learn about the lease-purchase agreement between
Melton and Beavers until March 2005, after Beavers=s had ordered parts on Melton=s account.  Leming denied ever
having received notice from Melton that Melton was not responsible for Beavers=s debts, and Goen recounted that he had never received any type of
communication from anyone associated with Melton=s business regarding the sale or lease-purchase of the body shop. 








The trial court entered a
judgment in favor of Klement for $6,260.24. 
The trial court also found in favor of Melton on his cross-claim against
Beavers in the same amount and entered findings of fact and conclusions of law
at Melton=s
request.  The trial court found, among
other things, that Melton authorized and regularly confirmed and ratified the
authority of his employees, including Beavers, to place orders for and receive
parts from Klement; that Melton=s employees would sign for the parts as they were delivered by
Klement; that Klement accepted orders from and delivered parts to Beavers only
in his capacity as Melton=s employee;
and that Melton did not communicate any notice, written or otherwise, to
Klement of his intent to terminate his personal liability under his contract to
pay for parts sold to Donnie=s Bodyshop by Klement.  The
trial court concluded, among other things, that Melton remained personally
liable to Klement for all merchandise ordered by and delivered to Donnie=s Bodyshop until March 2005, when Klement received notice of Melton=s intent to terminate his personal liability under the account
contract.  This appeal followed.

III.  Motion for Continuance

Melton moved for a
continuance on the morning of the trial because Beavers, whom Melton had joined
as a party and asserted a cross-claim against, did not appear for the
trial.  The trial court denied Melton=s motion for continuance.  In
his first issue, Melton argues that the trial court abused its discretion by
denying his motion for continuance because Beavers=s testimony was material to the outcome of the case and because he
used diligence in attempting to procure Beavers=s testimony.[2]









We review a trial court=s ruling granting
or denying a motion for continuance for an abuse of discretion.  See BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 800 (Tex. 2002). 
We do not substitute our discretion for that of the trial court.  In re Nitla S.A. de C.V., 92 S.W.3d
419, 422 (Tex. 2002) (orig. proceeding). 
Instead, we must determine whether the trial court=s action was so
arbitrary and unreasonable as to amount to a clear and prejudicial error of
law.  Marchand, 83 S.W.3d at
800.  The focus is on whether the trial
court acted without reference to guiding rules or principles.  Goode v. Shoukfeh, M.D., 943 S.W.2d
441, 446 (Tex. 1997).

If the basis for the requested continuance is Awant of testimony,@ the movant must
provide an affidavit in support of the motion stating that the sought-after
testimony is material, showing the materiality of the testimony, showing that
due diligence has been used to obtain the testimony, stating that the testimony
cannot be procured from another source, and stating the name and residence of
the witness.  Tex. R. Civ. P. 252; Tri-Steel Structures, Inc. v. Baptist
Found. of Tex., 166 S.W.3d 443, 447-48 (Tex. App.CFort Worth 2005,
pet. denied).

Here, Melton moved for a continuance on the day of the
trial based on the want of Beavers=s testimony.  Melton
included an affidavit in support of his motion for continuance, stating,








I am
unable to obtain the testimony of Jason Beavers of Wichita Falls, Texas.

 

Jason
Beavers is unavailable to attend the hearing as is currently set because his
child is ill, and there are no other persons with whom the child may be placed
on this date.

 

Defendant,
Donnie Melton, has requested that Jason Beavers be joined as a third party to
this lawsuit, and, therefore, the testimony of Jason Beavers is material to the
issues of this lawsuit.

 

Defendant,
Donnie Melton, had Jason Beavers=[s] served with a subpoena to
insure the appearance of Jason Beavers at the final hearing of all issues
before the Court.

 

Defedant,
Donnie Melton, believes that Jason Beavers=[s] testimony will show the
Court that Defendant, Donnie Melton, is not responsible for the claims made by
Plaintiff, Karl Klement Ford. 

 








Melton=s affidavit does not satisfy the materiality and diligence
requirements of rule 252.  His statement
that ABeavers=[s]
testimony will show the Court that [Melton] is not responsible@ for the claims made by Klement is conclusory and does not detail the
substance of the testimony that Melton intended to elicit from Beavers or state
that this testimony could not be procured from any other source.  And Melton=s statement that Beavers=s testimony is material because he joined Beavers as a party did not
entitle Melton to a continuance without any further explanation.  See Vickery v. Vickery, 999 S.W.2d
342, 363 (Tex. 1999) (stating that mere absence of a party does not entitle
movant to a continuance).  Although
Melton=s affidavit states that he served Beavers with a subpoena, the record
does not demonstrate that Melton attempted to procure Beavers=s testimony by taking his deposition or by obtaining it from some
other source.  See State v. Wood Oil
Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988) (stating that failure of
litigant to diligently utilize the rules of civil procedure for discovery
purposes will not authorize the granting of a continuance).  The affidavit also failed to state when
Beavers would be available to testify.  See
Briscoe v. Goodmark Corp., 130 S.W.3d 160, 169 (Tex. App.CEl Paso 2003, no pet.).  The
trial court further recognized that multiple other witnesses who had been
subpoenaed were present to testify. 
Accordingly, the trial court=s denial of Melton=s motion for continuance was not arbitrary or unreasonable and,
therefore, was not an abuse of discretion. 
See Marchand, 83 S.W.3d at 800.  We overrule Melton=s first issue.

IV.  Sufficiency of the EvidenceCSale and Delivery








In his second issue, Melton
argues that the evidence is legally and factually insufficient to show that
Klement sold and delivered goods to him. 
Within the context of this argument, Melton argues that Beavers did not
have the authority to act as his agent in purchasing the parts on his account
with Klement and that Klement had notice that Melton was not responsible for
Beavers=s debts to Klement because of the lease-purchase agreement.[3]


A.  Standards of Review

Findings of fact entered in a case tried to the court have
the same force and dignity as a jury's answers to jury questions.  Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991).  The trial
court's findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in
reviewing evidence supporting a jury's answer. 
Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).








 A legal sufficiency
challenge may only be sustained when: 
(1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable factfinder could, and disregard evidence contrary to the finding
unless a reasonable factfinder could not. 
City of Keller v. Wilson, 168 S.W.3d
802, 827
(Tex. 2005).  Anything more than a
scintilla of evidence is legally sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).








In contrast, an assertion
that the evidence is factually insufficient to support a fact finding means
that the evidence supporting the finding is so weak or the evidence to the
contrary is so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).  The trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given to their
testimony.  See Golden Eagle Archery,
Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). 

B.  Sworn Account and Apparent Authority

The elements necessary to
prove a suit on a sworn account are (1) a sale and delivery of the goods, (2)
that the charges on the account are just and true, and (3) that the amount is
unpaid.  Tex. R. Civ. P. 185; Site Work Group, Inc. v. Chem. Lime
Ltd., 171 S.W.3d 512, 513-14 (Tex. App.CWaco 2005, no pet.); Gibson v. Bostick Roofing & Sheet Metal
Co., 148 S.W.3d 482, 490 (Tex. App.CEl Paso 2004, no pet.).  The
cause of action must be supported by the affidavit of the party, his agent, or
attorney taken before some officer authorized to administer oaths, to the effect
that such claim is, within the knowledge of the affiant, just and true, that it
is due, and that all just and lawful offsets, payments, and credits have been
allowed.  Tex. R. Civ. P. 185. 
Melton challenges only the sale and delivery element of Klement=s sworn account claim. 

A Asale@ consists of
the passing of title from the seller to the buyer for a price.  Tex.
Bus. & Com. Code Ann. ' 2.106 (Vernon 1994).  A Abuyer@ is one who
buys or contracts to buy goods, and a Aseller@ is one who
sells or contracts to sell goods.  Id.
' 2.103(a)(1), (4). 








Apparent authority is
established by showing that a principal either knowingly permitted an agent to
hold himself out as having authority or showed such lack of ordinary care as to
clothe the agent with indicia of authority. 
NationsBank, N.A. v. Dilling, 922 S.W.2d 950, 952-53 (Tex.
1996).  An agent acting within the scope
of his apparent authority binds a principal as though the principal himself had
performed the action taken.  Ames v.
Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984).  A court may consider only the conduct of the
principal leading a third party to believe that the agent has authority in
determining whether an agent has apparent authority.  Dilling, 922 S.W.2d at 953.  

Notice is ordinarily a
question of fact; it is a question of law only when there is no room for
ordinary minds to differ as to the proper conclusions to be drawn from the
evidence.  Carroll Instrument Co.v.
B.W.B. Controls, Inc., 677 S.W.2d 654, 657 (Tex. App.CHouston [1st Dist.] 1984, no writ).

C.  The Evidence is Legally and Factually
Sufficient

Here, the evidence shows that
Melton entered into a credit agreement with Klement in September 2002 whereby
Melton agreed to pay for parts purchased on the account from Klement.  Klement assigned Melton a customer number
identifying his account, and Melton used a sales and use tax identification
number when ordering parts.  








During the past few years,
Melton exercised more of a managerial role at the business and permitted the
body shop employees, including Beavers, to order parts on the Klement
account.  The ordered parts were
delivered to the body shop and received by body shop employees; they were not
delivered directly to Melton.  According
to Leming, Melton did not have a problem with his employees ordering parts for
the business.  James Skinner, a former
employee at the body shop, agreed that Melton was not at the business Aa lot@ and that it
would have been Apretty
stupid@ if the body shop employees would have had to locate Melton so that
Klement could deliver the parts to him personally.  And Gary Dollar, a paint and body supplies
vendor who also sold supplies to Melton, testified that his employees delivered
ordered goods to the body shop and that the body shop employees, not Melton,
received the goods. Klement accordingly invoiced all parts ordered on the
account to ADonnie=s Wrecker and Bodyshop,@ and Melton regularly paid the invoices under this name. 








Although Melton testified
that he contacted all of his suppliers and informed them that he would no
longer be responsible for any body shop debts, Leming, Goen, and Leroy
Faltermier, Klement=s parts
manager, testified that they never received any notice about the arrangement
until March 2005Cafter
Beavers had ordered parts from Klement using Melton=s customer account number and sales and use tax number, after the
parts had been delivered to the same business address as the previous orders,
and after the account had incurred a delinquent balance of $8,294.75.  The trial court, as the sole judge of the
credibility of the witnesses and the weight to be given to their testimony, was
free to disbelieve Melton=s testimony
that he gave Klement notice of his arrangement with Beavers.  See Jackson, 116 S.W.3d at 761.  Moreover, Melton admitted that there was no
written agreement evidencing the lease-purchase agreement and that he did not
send out any written notices or run any advertisements announcing the sale of
the body shop.  Melton also testified
that there were no changes made to the appearance of the body shop while
Beavers operated it.  Goen, who
personally handles over 400 wholesale accounts for Klement, explained that
certain procedures have to be followed when creating a new account and that no
new account was created for Beavers. 








Citing section 4.005 of the
business organizations code, Melton argues that the trial court should have
taken notice of the effect that the assumed name certificate that Beavers filed
had on the ownership of Donnie=s Bodyshop.[4]  But section 4.005 applies to certificates
issued by the secretary of state, not the county, and section 5.051, titled AAssumed Name,@ provides
that the subchapter does not apply to an assumed name set forth under Chapter
36 of the Texas Business and Commerce Code, which is the authority under which
Beavers filed his assumed name.  Tex. Bus. Org. Code ' 5.051.  His argument is thus unpersuasive.

Melton also argues that
Beavers=s checks made out to him representing payment towards the purchase of
the body shop further served to provide Klement with notice that Beavers was
not his agent.  But the checks that were
admitted into evidence were made out to Melton, not Klement.  Melton does not explain how the checks had
the effect of putting Klement on notice of his arrangement with Beavers
prior to March 2005.








Melton further argues that he
should not be responsible for the charges made on the account because he is a Astranger-to-the-account.@  Klement is correct when he responds
that this defense is more appropriately described as a rule of pleading, which
dispenses with the rule that makes a verified account  prima facie evidence of the account in the
absence of a verified denial when the plaintiff=s own pleadings or exhibits reflect that the defendant was not a party
to the original transaction.  See
Gibson, 148 S.W.3d at 490-91. 
Nonetheless, addressing Melton=s argument, we note that his customer account number, tax number, and
address appear on the invoices attached to Klement=s pleading.  Combined with the
evidence supporting the trial court=s finding that Klement did not have actual knowledge of Melton=s agreement to lease-purchase or sell his business before March 2005,
his argument is unpersuasive.








Accordingly, viewing the evidence favorable to the trial
court=s findings and
disregarding the evidence and inferences contrary thereto, we hold that the
evidence is legally sufficient to show that Klement sold and delivered goods to
Melton; that Melton=s course of conduct clothed his employees, including Beavers, with the
apparent authority to order and receive parts from Klement on his credit
account; and that Klement did not receive notice regarding Melton=s nonliability for debt incurred by Beavers pursuant to their
lease-purchase agreement until March 2005. 
City of Keller, 168 S.W.3d at 827; Martinez, 977 S.W.2d at
334.  Moreover, considering all of the
evidence, the evidence supporting the same findings is not so weak or the
evidence to the contrary is not so overwhelming that a new trial should be
ordered.  Garza, 395 S.W.2d at
823.  The evidence is thus also factually
sufficient to support the trial court=s findings.  See Ellis County State Bank v. Keever,
888 S.W.2d 790, 794 (Tex. 1994) (stating that court of appeals need not detail
supporting evidence when upholding the factual sufficiency of the evidence
underlying the trial court=s judgment).  We overrule Melton=s second issue.

V.  Conclusion

Having overruled both of Melton=s issues, we
affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL F:    HOLMAN, GARDNER, and WALKER, JJ.

 

DELIVERED:  September 14, 2006











[1]See Tex. R. App. P. 47.4.





[2]Klement=s
initial argument that Melton waived this issue because he failed to include the
motion for continuance and supporting affidavit in the clerk=s
record is moot because we directed the clerk of the trial court to supplement
the record with Melton=s
motion and affidavit.  See Tex. R. App. P. 34.5(c).  





[3]Melton=s
sale and delivery, authority, and notice arguments implicitly challenge the
trial court=s
seventeenth (Melton authorized his employees to place orders for auto parts
used in the body shop), twenty-first (Melton regularly confirmed and ratified
his employees=
authority to obtain parts from Klement by accepting auto parts ordered by his
employees and paying for those parts), twenty-third (Klement=s
deliveries of automobile parts to Melton were in the regular course of
business), and forty-third (until March 2005, Klement did not have actual
knowledge of Melton=s
agreement to sell the sole proprietorship known as Donnie=s
Bodyshop to Beavers or any other person) findings of fact. 





[4]Section
4.005(a) provides that 

a
court . . . shall accept a certificate issued as provided by this code by the
secretary of state or a copy of a filing instrument accepted by the secretary
of state for filing as provided by this code that is certified by the secretary
of state as prima facie evidence of the facts stated in the certificate or
instrument.

 

Tex. Bus. Org. Code ' 4.005(a) (Vernon 2006).