NO. 07-08-0133-CV
Â 
IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 29, 2009

______________________________

KENNETH HUFFAKER, APPELLANT

V.

WYLIE LP GAS, INC., INDIVIDUALLY, AND AS GENERAL PARTNER
OF T&B, LTD., A TEXAS LIMITED PARTNERSHIP, AND 
T&B, LTD., A TEXAS LIMITED PARTNERSHIP, APPELLEES
_________________________________

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-534,840; HONORABLE RUBEN REYES, JUDGE
_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Kenneth Huffaker, appeals the granting of a no-evidence summary
judgment in favor of appellees, Wylie LP Gas, Inc. (individually, Wylie LP Gas), individually
and as General Partner of T&B, Ltd., and T&B, Ltd. (collectively, Wylie). We affirm the trial
courtâs judgment.
Â 
Factual and Procedural Background
Â Â Â Â Â Â Â Â Â Â On or about February 27, 2006, an explosion and fire occurred at Wylie LP Gasâs
propane gas business property that spread to adjacent property owned by Huffaker. The
fire damaged and destroyed real and personal property of Huffaker. Huffaker filed suit
against Wylie to recover damages resulting from this fire.



Â Â Â Â Â Â Â Â Â Â On January 10 and 11, 2008, Wylie filed a no-evidence motion for summary
judgment and a supplemental no-evidence motion for summary judgment in which Wylie
challenged, inter alia, whether Huffaker could produce evidence (1) that T&B, Ltd., or Wylie
LP Gas, as General Partner of T&B, Ltd., is a proper party to the suit; (2) of any of the
elements necessary to state claims for gross negligence, negligence per se, or res ipsa
loquitur; (3) of a breach of duty or that any breach of duty proximately caused Huffakerâs
damages in regard to the storage, maintenance, inspection, filling, or handling of propane
tanks; (4) Wylieâs implementation or monitoring of safety procedures was a breach of duty
or that any breach of duty proximately caused Huffakerâs damages; (5) Wylie had
knowledge of any person smoking in close proximity to the propane tanks or that such
smoking caused the explosion and fire; or (6) that Huffaker suffered compensable mental
or emotional anguish damages proximately caused by the explosion and fire.


 In response,
Huffaker filed summary judgment evidence consisting of deposition transcripts of former
Wylie employee David Rebber, current Wylie manager Ronald Bridges, and Wylie
President William Tipton. In addition, Huffaker provided transcripts of recorded statements
taken from Rebber and Bridges. Wylie objected to this evidence because it was unverified
and, therefore, constituted inadmissible hearsay. No ruling on Wylieâs objections are
contained within the record.
Â Â Â Â Â Â Â Â Â Â On February 25, 2008, the trial court granted Wylieâs no-evidence motions for
summary judgment. It is from this ruling that Huffaker now appeals.
Â Â Â Â Â Â Â Â Â Â By one issue, Huffaker contends that the trial court erred in granting Wylieâs no-evidence motions for summary judgment because Wylie did not preserve objections to
Huffakerâs summary judgment evidence and because that evidence constitutes more than
a scintilla of evidence to support Huffakerâs claim that Wylie was negligent. We affirm the
trial courtâs judgment.
Wylieâs Objections to Huffakerâs Evidence
Â Â Â Â Â Â Â Â Â Â In response to Huffakerâs presentation of summary judgment evidence, Wylie filed
objections to each of Huffakerâs six exhibits on the basis that the exhibits are unverified
and, therefore, constitute inadmissible hearsay. The trial court granted Wylieâs motions for
no-evidence summary judgment without ruling on Wylieâs objections to Huffakerâs summary
judgment evidence. On appeal, Huffaker contends that Wylie failed to preserve these
objections due to its failure to obtain a trial court ruling on them. 
Â Â Â Â Â Â Â Â Â Â Deposition transcripts and excerpts are not required to be authenticated when
submitted as summary judgment evidence. McConathy v. McConathy, 869 S.W.2d 341,
341 (Tex.1994) (per curiam); McClure v. Attebury, 20 S.W.3d 722, 731 (Tex.App.âAmarillo
1999, no pet.). Thus, the issue of whether Wylieâs objections were preserved relates solely
to the recorded statements of Bridges and Rebber. Generally, documents submitted as
summary judgment evidence must be sworn to or certified. Llopa, Inc. v. Nagel, 956
S.W.2d 82, 87 (Tex.App.âSan Antonio 1997, writ denied). Unauthenticated or unsworn
documents or documents not supported by affidavit are not entitled to consideration as
summary judgment evidence. Id. While defects in affidavits or attachments in response
to motions for summary judgment are generally waived unless properly preserved at trial,
a complete absence of authentication is a defect of substance that may be urged for the
first time on appeal. Blanche v. First Nationwide Mortgage Corp., 74 S.W.3d 444, 451
(Tex.App.âDallas 2002, no pet.). Our review of the recorded statements reveals that none
of the three are certified, sworn, or supported by affidavit. Consequently, we conclude that
Wylieâs objection was an objection to a defect of substance that was not waived by Wylieâs
failure to obtain a ruling of the trial court. Id. Further, because there is a complete
absence of authentication of this evidence, neither the trial court nor this Court may
consider these statements as evidence in response to Wylieâs motions for summary
judgment. Llopa, Inc., 956 S.W.2d at 87.
Huffakerâs Negligence Claims 
Â Â Â Â Â Â Â Â Â Â We now turn to the central issue in this appeal, which is whether the deposition
testimony of former Wylie LP Gas employee David Rebber, current Wylie LP Gas manager
Ronald Bridges, and Wylie LP Gas President William Tipton was more than a scintilla of
evidence to raise a genuine issue of material fact as to the elements of Huffakerâs
negligence claims challenged by Wylieâs motions for summary judgment.
Standard of Review
Â Â Â Â Â Â Â Â Â Â Because a no-evidence motion for summary judgment is, in essence, the same as
a pretrial directed verdict, we apply the same legal sufficiency standard. See Kelly v.
Demoss Owners Assân, 71 S.W.3d 419, 423 (Tex.App.âAmarillo 2002, no pet.). A no-evidence motion for summary judgment is properly granted unless the non-movant brings
forth more than a scintilla of evidence to raise a genuine issue of material fact on the
elements challenged by the motion. See Tex. R. Civ. P. 166a(i); Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when
the evidence ârises to a level that would enable reasonable and fair-minded people to differ
in their conclusions.â Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). 
On the other hand, less than a scintilla of evidence has been described as evidence âso
weak as to do no more than create a mere surmise or suspicion.â King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003). In reviewing a summary judgment, we must
view all of the summary judgment evidence in the light most favorable to the non-movant. 
See Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 195 (Tex.App.âAmarillo 1999,
pet. denied). However, when the summary judgment does not specify the grounds
asserted in the motion that it was premised upon, it will be affirmed if any of the grounds
presented are meritorious. Kelly, 71 S.W.3d at 422.
Applicable Law
Â Â Â Â Â Â Â Â Â Â The elements of a negligence claim are duty, breach of that duty, and damages
proximately caused by the breach of duty. See Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 477 (Tex. 1995). 
Â Â Â Â Â Â Â Â Â Â In assessing whether a duty exists, a reviewing court should consider factors such
as the risk, foreseeability, and likelihood of injury weighed against the social utility of the
actorâs conduct; the magnitude of the burden in guarding against injury; and the
consequences of placing the burden on the defendant. Greater Houston Transp. Co. v.
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). When the defendant distributes a dangerous
article or agent, the defendant owes the public the degree of care proportionate to and
commensurate with the dangers involved. McAfee v. Travis Gas Corp., 137 Tex. 314, 153
S.W.3d 442, 447 (1941). When the defendant distributes a dangerous article or agent, it
owes a nondelegable duty to take all reasonable precautions to effectually protect third
parties from injury. Loyd v. Herrington, 143 Tex. 135, 182 S.W.2d 1003, 1004 (1944).



Analysis
Â Â Â Â Â Â Â Â Â Â In its motions, Wylie contended that Huffaker could produce no evidence that either
T&B, Ltd., or Wylie LP Gas, in its capacity as General Partner of T&B, Inc., were proper
parties to this suit. According to the deposition transcript of Tipton, T&B, Ltd., owns the
real property and some of the equipment that Wylie LP Gas leases. Wylie LP Gas is the
General Partner of T&B, Ltd., and holds a one percent ownership interest in T&B, Ltd. 
However, this is all of the evidence presented in regard to these two defendants. Huffaker
presented no evidence nor even alleges how T&B, Ltd., or Wylie LP Gas, as General
Partner of T&B, Ltd., owed a duty to Huffaker, breached that duty, or caused the damages
suffered by Huffaker as a result of the breach. Therefore, we affirm the trial courtâs no-evidence summary judgment as it relates to claims against T&B, Ltd., and Wylie LP Gas,
in its capacity as General Partner of T&B, Ltd. See Tex. R. Civ. P. 166a(i); Ford Motor Co.,
135 S.W.3d at 600. 
Â Â Â Â Â Â Â Â Â Â As to Huffakerâs claims against Wylie LP Gas, individually, Wylie contends that
Huffaker is unable to present more than a scintilla of evidence to raise a genuine issue of
material fact as to the duty, or standard of care, Wylie LP Gas owed to Huffaker or that
Wylie LP Gas breached that duty. 
Â Â Â Â Â Â Â Â Â Â Expert testimony is necessary when the alleged negligence is of such a nature as
not to be within the experience of a layperson. Turbines, Inc. v. Dardis, 1 S.W.3d 726, 738
(Tex.App.âAmarillo 1999, pet. denied) (citing Roark v. Allen, 633 S.W.2d 804, 809 (Tex.
1982)). The expert testimony must establish both the standard of care and the violation
of that standard. Id. However, even expert testimony that a particular action would be
prudent, beneficial, recommended, or desirable cannot be taken as evidence of the
standard of care or that the failure to take the action constituted a breach of that standard. 
Id. at 739.
Â Â Â Â Â Â Â Â Â Â In the present case, Huffaker provided no expert testimony as to any of the theories
of liability asserted in his live pleading. Thus, we must analyze each of Huffakerâs theories
of liability and the evidence presented as to each to determine whether a layperson would
be able to ascertain the applicable standard of care in the absence of expert testimony.
Â Â Â Â Â Â Â Â Â Â Huffaker contends that Wylie LP Gas was negligent in the manner in which it stored
propane tanks at its facility. In support of this theory, Huffaker offered the testimony of
Tipton that, at the time of the fire, Wylie LP Gas was storing 11,000 full 20 pound propane
tanks at its facility. This factual testimony provides no insight into what the applicable
standard of care would have been for Wylie LP Gas. In fact, the only evidence relating to
the manner of storage of the propane tanks was Tiptonâs testimony that the tanks were
stored in a manner that did not violate any rule or regulation of the Texas Railroad
Commission and that Wylie LP Gas took the additional step of using dividers to ensure that
the tanks did not touch one another, even though such a step was not required by any law. 
As such, we do not find the evidence sufficient to allow an ordinary layperson to conclude
what the applicable standard of care was in regard to Wylie LP Gasâs storage of its
propane tanks nor that Wylie LP Gas breached this standard. 
Â Â Â Â Â Â Â Â Â Â Huffaker also contends that Wylie LP Gas was negligent in failing to properly
maintain, handle, and inspect the propane tanks in its storage. In support of this
contention, Huffaker cites Bridgesâs testimony that there were times when employees of
Wylie LP Gas did not properly check the tanks for leaks. However, Bridges also testified
that he began working for Wylie LP Gas sometime in the late 1980s. There is no evidence
of the frequency with which employees failed to properly check the tanks and, further, there
is no evidence as to how often a reasonable propane dealer would be expected to inspect
the tanks in its storage. While the testimony does establish that Bridges felt that there
were times when proper inspections were not performed, because the basis for his opinion
is not shown, we cannot conclude what the applicable standard of care was in regard to
Wylie LP Gasâs maintenance, handling, and inspection of the tanks nor does the evidence
raise a genuine issue of fact about that standard having been breached. 
Â Â Â Â Â Â Â Â Â Â Huffaker contends that Wylie LP Gas was negligent in its filling of the propane
tanks, particularly in that it would overfill the tanks which would then require that some of
the liquid propane gas be bled off. Huffaker cites testimony of both Rebber and Bridges
that there were times when tanks would be overfilled and the tanks would then have to be
bled off. However, nothing in this testimony or in any evidence offered by Huffaker
establishes that the applicable standard of care would be that no tanks ever be overfilled
or that, if a tank was overfilled, that it should not be bled off. Because the filling of liquid
propane gas tanks lies beyond the experience of an ordinary layperson, we conclude that
Huffaker has provided no evidence of what the applicable standard of care is as it relates
to filling propane tanks and, even more so, whether bleeding off the excess propane in an
overfilled tank falls below the applicable standard of care. 
Â Â Â Â Â Â Â Â Â Â Huffaker also contends that Wylie LP Gas failed to implement and monitor proper
safety procedures. The evidence that Huffaker relies on in support of this contention is that
Wylie LP Gas had not held fire drills, three employees were performing their work without
supervision, and that there were times when employees did not properly check for leaks
in the stored tanks. However, there is no evidence that a reasonable liquid propane dealer
would conduct fire drills or that, had Wylie held fire drills, the fire would have been
contained. Further, there is no indication why employees needed to be supervised at all
times or how the lack of supervision of these particular employees fell below the applicable
standard of care. As to the failure to properly inspect the stored tanks, that issue was
addressed above. Thus, there was no evidence presented that would allow a reasonable
layperson to identify the applicable standard of care in relation to Wylie LP Gasâs safety
procedures nor that Wylie LP Gasâs safety procedures fell below that standard.
Â Â Â Â Â Â Â Â Â Â Finally, Huffaker contends that Wylie LP Gas knowingly allowed smoking in close
proximity to the propane tanks. Rebber testified that he has seen employees âwalk right
to the gate [of Wylie LP Gasâs facility] and throw a cigarette downâ and that it âwas
possibleâ that an employee was smoking just east of the propane tank storage area where
the fire started.


 Bridges testified that he was aware that the fire marshal found cigarette
butts inside the yard and that the employees were allowed to smoke inside the confines
of the gate of Wylie LP Gasâs facility. However, because there was no evidence offered
of the proximity of the area where smoking occurred to the propane tanks, we would have
to speculate that it was an unsafe distance. While we believe that a layperson could
conclude that smoking in close proximity to liquid propane gas tanks was a breach of the
applicable standard of care, Huffaker offered no evidence to raise a genuine issue of
material fact as to how close to the propane tanks employees were smoking. 
Â Â Â Â Â Â Â Â Â Â Because there is no expert evidence establishing the applicable standard of care
owed by Wylie LP Gas and because a layperson would not be able to determine the
applicable standard of care in regard to the theories of liability asserted by Huffaker, we
conclude that the trial court was correct in granting Wylieâs no-evidence summary judgment
motions.
Conclusion
Â Â Â Â Â Â Â Â Â Â For the foregoing reasons, we affirm the trial courtâs judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Mackey K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice






































rs.  In 2007, the State filed a motion
to proceed alleging multiple violations of the conditions of Appellant's
community supervision, including the commission of the offense of "Injury
to a Child" on July 5, 2007.[1]Â  Arising out of the July 5 incident, Appellant
was subsequently charged with the offense of aggravated assault[2]
in Cause No. 2008-419,983, and on May 4, 2009, Appellant proceeded to a jury
trial on a plea of "not guilty."Â 
Simultaneously with the jury trial in Cause No. 2008-419,983, Appellant
entered a plea of not true to the State's motion to proceed in Cause No.
2005-409,347.Â  The jury trial resulted in
a "not guilty" verdict; however, after hearing additional testimony
on the alleged violations of community supervision, the court adjudicated
Appellant guilty of the offense charged in Cause No. 2005-409,347 and assessed
punishment at twenty years confinement. 

Â Â Â Â Â Â Â Â Â Â Â  Presenting three issues, Appellant
asserts the trial court abused its discretion when it revoked his community
supervision because:Â  (1) the State
failed to prove by a preponderance of evidence that he committed the offense
alleged in the motion to proceed (i.e., injury to a child); (2) he was indigent
and unable to make required payments; and (3) although he failed to complete
programs required by the order for deferred adjudication, there was still
sufficient time remaining on his term of community supervision to complete the
programs.Â  We affirm.

Adjudication Hearing

Shortly after receiving the jury's
"not guilty" verdict in Cause No. 2008-419,983, the trial court held
a hearing to adjudicate Appellant's guilt in Cause No. 2005-409,347.Â  The trial court announced, without objection,
that it would "take into consideration all of the evidence presented in
the jury trial."Â  Afterwards, both
parties stated they were ready to commence the proceedings.

Â Â Â Â Â Â Â Â Â Â Â  Patricia Acosta testified to the
facts giving rise to the original offense charged in Cause No.
2005-409,347.Â  She testified that in May
2005, while she was at Appellant's house to pick up her son following
visitation, he grabbed her cell phone as she was calling her family to check in,
broke the phone, and tore her shirt off as she was running away.Â  Appellant then took her car keys and told
her, that if she wanted her son, she would go into his house.Â  After she went into the house, Appellant told
her that he was going to kill her and keep her son.Â  He then threatened her with a knife, punched
her in the stomach, got atop her, and held a knife to her throat.Â  Afterwards, he forced her and her son into a
car and drove them to a park where he threatened to kill her if she did not
come back to him.Â  Eventually, she told
him she would come back to him and he drove them back to his house.Â  When they pulled into the driveway, her
family pulled in behind them.Â  Patricia
grabbed her son and ran to her family.Â 
Thereafter, the police arrived.Â  

Â Â Â Â Â Â Â Â Â Â Â  Joanie
Jones, Appellant's community supervision officer, testified that, including the
commission of the offense alleged to have occurred on July 5, 2007, Appellant
exhibited a pattern of behavior for continued violence.Â  She testified Appellant failed to pay
community supervision fees and restitution for a number of months when he was
employed and had six hundred dollars in disposable income each month.Â  She also testified that he blamed others for
his noncompliance and aggressive behaviors.Â 
Although he was referred to anger counseling twice for specific classes,
she testified he failed to complete either class and generally resisted
participating in any counseling.Â  She
further testified Appellant failed to attend a budgeting class as directed.Â  These infractions continued despite multiple
supervision conferences and an administrative hearing intended to obtain
Appellant's compliance with the requirements of his deferred adjudication
order.

Â Â Â Â Â Â Â Â Â Â Â  Appellant did not testify on his own
behalf or present any evidence.[3]Â  The trial court subsequently granted the
State's motion finding, in pertinent part, as follows:

[T]he State proved by a preponderance of the evidence
that defendant committed the offense of injury to a child; . . . , defendant
failed to pay his supervision fees as alleged; . . . , failed to pay
restitution as alleged; . . . , failed to maintain and complete any drug,
alcohol or any other program as directed and deemed necessary, failed to pay
for, attend and successfully complete individual anger counseling. 

Â 
Â Â Â Â Â Â Â Â Â  The trial court also
found Appellant used a deadly weapon in the commission of the offense and then
sentenced him to twenty years confinement.Â 
This appeal followed.

Discussion

Â Â Â Â Â Â Â Â Â Â Â  Although Appellant acknowledges in
his brief that the trial court properly took judicial notice of the evidence
introduced in his criminal trial at his subsequent adjudication hearing, he
asserts the trial court abused its discretion by finding the State proved the
offense of injury to a child by a preponderance of evidence when the State
introduced no independent evidence of that offense during the trial or
adjudication hearing.Â  In the
alternative, Appellant asserts that, even if there was some evidence supporting
the trial court's finding, the evidence was legally insufficient.Â  

Â Â Â Â Â Â Â Â Â Â Â  Appellant
also asserts the trial court abused its discretion by proceeding to
adjudication when there was insufficient evidence introduced by the State to
show he was able to make required payments and there was sufficient time
remaining in his community supervision term for him to complete any necessary
programs he had failed to complete.

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  On violation of a condition of
community supervision imposed under an order of deferred adjudication, a
defendant is entitled to a hearing limited to the determination of whether the
trial court should proceed with an adjudication of guilt on the original charge
under section 21 of article 42.12 of the Texas Code of Criminal Procedure.Â  Tex. Code Crim. Proc. Ann.
art. 42.12, Â§ 21 (Vernon 2006).Â  See Antwine v. State, 268 S.W.3d 634, 636
(Tex.App.--Eastland 2008, pet. ref'd).Â 
"This hearing is neither a criminal nor a civil trial, but is
rather an administrative hearing."Â  Wilkins v. State, 279
S.W.3d 701, 703 (Tex.App.--Amarillo 2007, no pet.) (citing
Cobb v. State, 851 S.W.2d 871, 873
(Tex.Crim.App. 1993)). 

Â Â Â Â Â Â Â Â Â Â Â  As
such, the State's burden on a motion to revoke community supervision is lower
than the burden of proof necessary for criminal conviction.Â  Smith v. State, 932 S.W.2d 279, 281 (Tex.App.--Texarkana 1996, no
pet.).Â  The State has the burden
of showing by a preponderance of the evidence that the defendant committed a
violation of the condition(s) of community supervision; Cobb, 851 S.W.2d at 873; and satisfies this burden "when the
greater weight of credible evidence before the court creates a reasonable
belief that it is more probable than not that a condition of probation has been
violated as alleged in the [State's] motion."Â  Joseph v. State, 3 S.W.3d 627, 640 (Tex.App.--Houston [14th Dist.]
1999, no pet.) (citing Battle v. State, 571 S.W.2d 20, 21-22 (Tex.Crim.App. 1978)). 

Â Â Â Â Â Â Â Â Â Â Â  Our review of an order revoking
community supervision is limited to determining whether the trial court abused
its discretion.Â  Rickels v. State, 202 S.W.3d 759, 763 (Tex.Crim.App. 2006) (citing Cardona v. State, 665 S.W.2d 492, 493
(Tex.Crim.App. 1984)).Â  Further, in
determining the sufficiency of the evidence to sustain a revocation, we view
the evidence in the light most favorable to the trial court's ruling; Jones v. State, 589 S.W.2d 419, 421
(Tex.Crim.App. 1979), while recognizing that "[t]he trial court is the
sole judge of the credibility of witnesses and the weight given to their
testimony."Â  Antwine, 268 S.W.3d at 636
(citing Cardona, 665 S.W.2d at 493).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  At
the outset we note that a finding of a single violation of community
supervision is sufficient to support revocation.Â  Tex. Code Crim. Proc. Ann.
art. 42.12, Â§ 21(b) (Vernon 2006); Antwine, 268 S.W.3d at 636
(citing Moore v. State, 605 S.W.2d
924, 926 (Tex.Crim.App. 1980)).Â  See Coffel v.
State, 242 S.W.3d 907, 909 (Tex.App.--Texarkana 2007, no pet.); Nurridin v. State, 154 S.W.3d 920, 924
(Tex.App.--Dallas 2005, no pet.).Â  Based
upon the evidence presented, we find the trial court did not err in revoking
Appellant's deferred adjudication community supervision because the State
proved by a preponderance of evidence that Appellant failed to make required
payments and complete scheduled counseling/anger management classes as required
under the applicable order of deferred adjudication.

Â Â Â Â Â Â Â Â Â Â Â  Appellant's
second and third issues are overruled.Â 
Our ruling on Appellant's second and third issues pretermits
issue one.Â  See Tex.
R. App. P. 47.1; Smith, 932 S.W.2d at 283; Ex parte Brown, 875 S.W.2d 756, 761
(Tex.App.--Fort Worth 1994, no pet.). 

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  The trial
court's judgment is affirmed.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Patrick
A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â  JusticeÂ  

Â 

Do not publish.











[1]The State's motion to proceed alleged that Appellant
willfully and intentionally violated the conditions of his community
supervision by:Â  (1) committing the
offense of "Injury to a Child" on July 5, 2007; (2) failing to avoid
injurious or vicious habits by demonstrating a history and consistent pattern
of assaultive behavior, to-wit: he "committed a subsequent Assault/Injury
to a Child on 07/05/07"; (3) failing to pay community supervision fees for
a period of months; (4) failing to make required restitution payments; (5)
failing to attend and complete counseling deemed necessary by his community
supervision officer; and (6) failing to successfully complete individual anger
counseling.Â  The State never specifically
pled the elements of the offense of "Injury to a Child" or "Assault/Injury
to a Child."Â  See Tex. Penal Code Ann. Â§ 22.04 (Vernon Supp. 2009).





[2]The
indictment alleged that "on or about July 5, 2007, [Appellant] did then
and there intentionally, knowingly and recklessly cause serious bodily injury
to Thristen [last name omitted] by striking the said [victim], who then and
there was a member of the defendant's household or family, and did then and
there use a deadly weapon, to-wit: the exact description of which is unknown to
grand jurors, that in its manner of use or intended use was capable of causing
death and serious bodily injury."Â  See Tex. Penal Code Ann. Â§ 22.02 (Vernon
Supp. 2009).Â  





[3]Appellant
presented no evidence or financial information to support his claim that he was
unable to make the required payments even though he was employed and earned
enough to have six hundred dollars a month in disposable income.Â  See Jimerson v. State, 957 S.W.2d 875,
878 (Tex.App.--Texarkana 1997, no pet.).Â 
Where a defendant does not testify or otherwise rebut the State's
evidence of his ability to pay or present any justification for non-payment, an
inference of intentional non-payment exists.Â 
Jackson v. State,
915 S.W.2d 104, 107 (Tex.App.--San Antonio 1996, no pet.).Â  Further, even if there may be sufficient time
left in Appellant's term of community supervision to complete counseling and
anger management classes, the uncontroverted evidence shows Appellant
consistently resisted participation in such classes and failed to "[a]ttend and complete any drug, alcohol, or any other program
as directed and deemed necessary by [his] Supervision Officer." Â See
Smith, 932 S.W.2d at 282-83.

Â Â Â